## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 2:01CR10023 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | By: James P. Jones |
| **AGNES HOLBROOK**, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for the United States; Agnes Holbrook, Pro Se Defendant.*

Agnes Holbrook, a federal inmate, brings this pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2008). She challenges her convictions and sentence for possession of a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C.A. § 922(g)(9) (West 2000), and making a false statement in order to obtain a firearm in violation of 18 U.S.C.A. § 922(a)(6) (West 2000). The government has responded and asserts that the defendant's § 2255 motion should be denied as to all claims.[1]

---

[1] Initially, the government requested that Claim 1 of the § 2255 motion be stayed pending a decision by the United States Supreme Court. As explained hereafter, that decision has now been rendered.

Holbrook asserts that the government's response should be rejected as untimely filed. The record indicates, however, that by order entered April 28, 2008, the court granted the government an extension until May 15, 2008, to respond to the § 2255 motion, and the

Upon review of the record, I find that one of the claims must be set down for an evidentiary hearing and the remainder of the claims denied.

I

A. FACTS SURROUNDING OFFENSES.

In addressing Holbrook's initial appeal, the United States Court of Appeals for the Fourth Circuit summarized the facts in her case as follows:

> The charges against Holbrook in this case arise out of the March 24, 2001, shooting death of her husband, Larry. In the months prior to March 2001, Holbrook and Larry had separated and had become embroiled in a bitter divorce. Both had filed motions for protective orders against each other on numerous occasions, Larry had started a relationship with another woman, Stephanie Gibson, and he had told several individuals that he was removing Holbrook as a beneficiary of his government benefits and life insurance policies. On February 19, 2001, Holbrook purchased a .22 caliber pistol from a federally licensed firearms dealer in Pennington Gap, Virginia. In filling out the required screening paperwork, Holbrook indicated that she never had been convicted of a misdemeanor crime of domestic violence, an offense that disqualifies persons from possessing firearms, *see* 18 U.S.C.A. § 922(g)(9). In fact, she previously had been convicted of assaulting her former husband, Clay Phillips, with a knife. Because Holbrook committed this prior offense when her name was Agnes Bernice Phillips, the record check performed by the dealer did not reveal the conviction, and the dealer sold her the firearm. After test-firing the pistol several days after purchasing it, Holbrook determined that the gun was in need of repairs and had a friend return it to the dealer.

response was filed on May 7, 2008.

A few weeks later, on March 5, 2001, Holbrook lost her job. Her employer, the Department of Social Services for Lee County, Virginia, forced her to resign after discovering that she had lied on her job application about her criminal history. Holbrook believed that her employer had made this discovery as the result of a tip from Larry.

That same day, Holbrook set out to acquire a second firearm. Almost immediately after resigning from work, Holbrook called a friend, Jason Gibson (the estranged husband of Larry Holbrook's paramour, Stephanie Gibson), to inquire about obtaining a firearm. Gibson eventually took Holbrook to the residence of his cousin, Steve Wuderman, who sold Holbrook a .357 magnum handgun. Wuderman was not a licensed firearms dealer. Holbrook test-fired the weapon, made payment arrangements, and left the Wuderman residence with Gibson.

On March 24, 2001, Holbrook used the .357 magnum to shoot and kill Larry in a dispute in the bedroom of her home. The precise details of the shooting remain somewhat a mystery because Holbrook was the only witness to the shooting, and, as explained below, her version of events has changed significantly over time. Some facts about the events of that date, however, are undisputed. First, record evidence indicates that on the date of the shooting, Larry had been seen in a light-hearted mood, and he had told someone that he was going to pick up his kids to go play ball. Second, although it is unclear from the evidence why Larry drove to Holbrook's residence on March 24, the evidence does show that Larry had a firearm in his car when he arrived at the Holbrook residence and that he left that firearm in the car when he went inside. Finally, evidence in the record shows that Holbrook did not call the police until shortly after 6:00 pm, although neighbors testified that they heard a single gun shot between 4:00 pm and 4:45 pm.

Initially, Holbrook told investigators that Larry had committed suicide in front of her. The investigators' examination of the forensic evidence, however, led them to question Holbrook's truthfulness. For example, their investigation found that Larry Holbrook had no gun-powder residue on his hands and his fingerprints were not found on

- 3 -

the weapon; Larry's body had been moved at least three times after death; and evidence indicated that the murder weapon had been wiped clean.

Later, at her first trial, and only after being confronted with the forensic evidence described above, as well as evidence linking the murder weapon to her, Holbrook admitted that she had shot Larry. According to Holbrook's trial version of events, Holbrook exited the bathroom of her home, and saw Larry standing in the hallway with her .357 magnum, which, Holbrook explained, Larry must have found in its hiding place behind her dresser mirror. Larry then threatened to kill her and a stand-off ensued. The couple ended up in the bedroom with Larry on his knees on the floor and Holbrook on the bed. When Larry laid the pistol on the bed, she grabbed the weapon and shot Larry once in the face in an act of self-defense.

At her second trial, Holbrook recanted much of this version of events, testifying that although she may have killed Larry, she had no recollection of exactly what happened.

*United States v. Holbrook*, 368 F.3d 415, 416-18 (4th Cir. 2004), *rev'd*, 545 U.S. 1125 (2005).

B. PROCEDURAL HISTORY.

1. The First Trial.

An April 26, 2001, Indictment charged Holbrook with violating 18 U.S.C.A. § 922(g)(9) by possessing firearms after having been convicted of a misdemeanor crime of domestic violence ("MCDV") (Count One) and 18 U.S.C.A. § 922(a)(6) by making false statements to a firearms dealer in connection with her purchase of the .22 caliber pistol from the federally licensed firearms dealer (Count Two). Holbrook

- 4 -

retained attorney Richard D. Kennedy to represent her. Attorney Kristen D. Dean was later retained as co-counsel.

Kennedy filed several pretrial motions on his client's behalf. On June 15, 2001, I ruled that Holbrook would be allowed to present evidence in support of a justification defense and I would decide, after conclusion of the evidence at trial, whether a jury instruction on justification was warranted.

At trial, Holbrook stipulated that she had been convicted of an MCDV. At the conclusion of the government's evidence, her counsel moved orally for a judgment of acquittal, which I denied. Holbrook testified in her own defense. She admitted possessing both firearms, as alleged in the Indictment. She also stated that she "had to lie" and "illegally possess a second gun" to protect herself and her children from her estranged husband. (Trial Tr. vol. 1, 21, Aug. 21, 2001.) Indeed, she admitted to all of the elements of the crimes charged. Based on the government's evidence and Holbrook's testimony, I declined to instruct the jury on a justification defense.

### 2. Guilty Plea to Count One.

On August 23, 2001, before the conclusion of the trial, but after I announced that I would not permit the jury to consider a justification defense, Holbrook decided to plead guilty to Count One, pursuant to a signed written Plea Agreement. Under the terms of the agreement, the government promised to dismiss Count Two; stipulated

- 5 -

that Holbrook should be sentenced under the sentencing guideline applicable to second degree murder; and agreed to recommend full credit for acceptance of responsibility in recognition of the fact that Holbrook had gone to trial in order to preserve a defense based on justification. The Plea Agreement preserved Holbrook's right to appeal her sentence, but expressly waived her right to collaterally attack her conviction and sentence under § 2255.

A principal advantage to Holbrook from the Plea Agreement was that by agreeing to dismiss Count Two, the government limited her possible sentence to ten years, the statutory maximum for Court One. *See* 18 U.S.C.A. § 924(a)(2) (West 2000).

Before accepting Holbrook's guilty plea, I conducted the extensive colloquy required by Federal Rule of Criminal Procedure 11. She had already testified that she was a college graduate. Asked if she had ever been treated for mental illness, she testified that she had been treated for depression in 1996 and again in 2001. She stated that in 2001, after her husband's death, she had received four days of inpatient treatment for depression. She was prescribed medication for this condition, but after her discharge she did not have the money to go back to the doctor and did not take any medication for her depression. She denied ever being treated for substance abuse problems. Asked if she had "taken any drugs, medicine or pills within the last 4

- 6 -

hours," she said, "Yes." (Plea Tr. 4, Aug. 23, 2001.)[2] Questioned further, however, she stated that she had a prescription medication to help her sleep and that she had taken it two nights before, but had taken no medication at all on the night before the guilty plea. Her attorneys affirmed that they had no doubt as to Holbrook's competency to enter a guilty plea. She agreed that she had had an adequate opportunity to discuss with her attorneys the charges against her. Holbrook identified her Plea Agreement, with her initials on each page and her signature at the end. She stated that she had read and discussed the agreement with her attorneys before signing it and that she was fully satisfied with her counsel's representation.

The prosecutor summarized the terms of the Plea Agreement, and Holbrook affirmed that the terms were included in the agreement as she understood it. I questioned her specifically as to whether she understood that she was waiving her right to collaterally attack her sentence or conviction, and she answered, "Yes." (*Id.* at 9.) I asked whether she understood that although she had reserved the right to appeal any pretrial ruling or sentence, I did not believe she had the right to appeal any rulings made during trial, including my decision not to instruct the jury on justification or duress, and she answered, "Yes." (*Id.* at 10-11.) Holbrook denied that she was pleading guilty based on any promise made to her outside the Plea

---

[2] The "4" in the transcript is a clear typographical error and should be "24" hours.

Agreement and denied that anyone had attempted in any way to force her to plead guilty. I questioned her about her understanding of the consequences of her Plea Agreement, including the application of the sentencing guidelines, and she affirmed that she understood. I found Holbrook fully competent and accepted her guilty plea, but deferred acceptance of the Plea Agreement until after preparation of a Presentence Investigation Report ("PSR").

The court then heard testimony and argument on whether Holbrook should be detained pending her sentencing, which was scheduled for November 8, 2001. Special Agent Lesnak of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") testified that Holbrook had been admitted to a hospital after her husband's death because she had been suffering from thoughts of committing suicide through an overdose of sleeping pills; that Holbrook had stated her belief that she was the only one who could take care of her children and that she lost sleep when she was away from them; that on prior occasions Holbrook had threatened and attempted suicide and had threatened to kill herself along with her child or husband; and that after her hospital stay, doctors had recommended follow up treatment, which Holbrook had not obtained. Because I could not find clear and convincing evidence that Holbrook would not be a danger to herself or others, I ordered that she be detained pending sentencing.

- 8 -

### 3. Attempt to Withdraw Guilty Plea.

Several months after her guilty plea, Holbrook fired her attorneys, Kennedy and Dean, and in October 2001, she moved to substitute attorney Anthony E. Collins as her counsel.  On November 5, 2001, Collins filed on Holbrook's behalf a Motion to Withdraw the Guilty Plea, a Notice of Insanity Defense, and a motion seeking authorization for Holbrook to receive a mental evaluation.  The government notified Collins by letter dated November 7, 2001, that it considered the attempt to withdraw the guilty plea as a breach of the terms of the Plea Agreement, but that it did not intend to void the Agreement.  Instead, the government explained that pursuant to the terms of the agreement regarding possible remedies in the event of breach, it intended to hold Holbrook to her guilty plea on Count One and to prosecute her on Count Two.

On November 8, 2001, I conducted a hearing on Holbrook's Motion to Withdraw the Guilty Plea.  Collins argued that Holbrook should be allowed to withdraw her guilty plea because (1) she had believed she could revisit the guilty plea later based on her mental state, (2) she had believed her guilty plea to the federal charge would result in dismissal of the pending state court charges, and (3) she had been legally insane at the time of the offenses.  Holbrook testified that she did not remember what had happened the day her husband was killed, that her trial testimony had been what she thought she "remembered" from hearing others talk about the

- 9 -

incident, and that she did not think (and had never independently thought) that she had killed her husband. (Hearing Tr. 20-25, Nov. 8, 2001.) She denied that her prior attorney Kennedy "[had made] up the details," but when he told her she needed to remember, she would come up with details because "it seemed like it happened then," and that each time she related the events of the night of the killing, she was truthfully saying what she thought she remembered. (*Id.* at 36-40.) Holbrook's sister, Lisa Clark, also testified that after the shooting and around the time of the trial and guilty plea, Holbrook had exhibited problems with memory of events and had appeared as though she did not hear or respond to questions.

I took the Motion to Withdraw the Guilty Plea under advisement and ordered Holbrook committed for a competency evaluation. The examiner filed a report on February 25, 2002, which found that Holbrook was competent, did not suffer from a mental illness. and was able to appreciate the wrongfulness of her actions at the time of the offense.

On May 9, 2002, I heard additional evidence from the defense. Holbrook called Robert Philip Granacher, Jr., M.D., a psychiatrist, to testify as to his opinion of Holbrook's mental state. Granacher opined that he had found "multiple instances of evidence that [Holbrook] had an altered mental state" that would support a defense based on her mental state, such as "fear for her life, whether she had sufficient mental

- 10 -

capacity to know right from wrong, whether she had sufficient mental capacity to restrain her behavior." (Hearing Tr. 2-8, 14, May 9, 2002.) However, Granacher also stated that he did not believe Holbrook would meet the criteria of the federal definition of insanity, which is "a severe mental disease or defect causing a person to be unable to appreciate the nature and quality or the wrongfulness of the acts." (*Id.* 17.)

Based on the record, I found that there was not good cause to allow the withdrawal of the guilty plea.

The government moved on June 11, 2002, to continue sentencing on Count One until after Holbrook could be retried on Count Two. I granted the government's motion and on June 25, 2002, issued an opinion memorializing my decision. *United States v. Holbrook*, 207 F. Supp. 2d 472 (W. D. Va. 2002). I found that the remedy the government sought to pursue was authorized by Paragraph D(g) of the Plea Agreement, which allowed the government in the event of breach to "refuse to abide by any other sentencing or other stipulations" in the agreement, including its promise to dismiss Count Two. *Id.* at 474-75.

### 4. The Second Trial.

On July 12, 2002, Holbrook's attorney filed a Motion to Dismiss Count Two, arguing that a second trial would violate Holbrook's rights under the Double

- 11 -

Jeopardy Clause because a jury had previously been empaneled and heard evidence on that count during the earlier trial. He also moved to continue the trial and to clarify the terms of the Plea Agreement. After conducting a hearing on the day of trial, I denied the Motion to Dismiss Count Two, finding that Holbrook had waived her double jeopardy defense when she executed the Plea Agreement after all evidence on Count One had been presented to the jury. I also denied Collins's other motions as moot, in light of my prior rulings.

A jury trial on Count Two of the Indictment, the charge for making a false statement in order to obtain a firearm in violation of 18 U.S.C.A. § 922(a)(6), was held on July 22, 25, and 26, 2002. In pretrial discussions, the parties disagreed about whose burden it was to prove that Holbrook had counsel or had waived counsel in the MCDV case in 1989. A prior MCDV does not qualify as a predicate offense under § 922(g)(9) unless the defendant was represented by counsel during the MCDV proceedings or waived that right. *See* 18 U.S.C.A. § 921(a)(33)(B)(i)(I) (West 2000) (providing that "[a] person shall not be considered to have been convicted of [an MCDV] for purposes of this chapter, unless . . . the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case"). Moreover, if Holbrook's prior misdemeanor conviction did not qualify as an MCDV under § 921(a)(33)(B)(i)(I) so as to make her possession of a firearm

unlawful under § 922(g)(9), then her failure to disclose that misdemeanor conviction on the firearms form did not meet the elements necessary for conviction under 18 U.S.C.A. § 922(a)(6). This section makes it unlawful for a person to make a "false . . . statement . . . intended or likely to deceive [the seller] with respect to *[a] fact material to the lawfulness of the sale*." § 922(a)(6) (emphasis added). If Holbrook's simple assault conviction did not qualify fully as an MCDV under § 922(g)(9), she could legally possess a firearm and her misrepresentation regarding the prior conviction was not "material to the lawfulness of the sale."

The government represented that its evidence would include the record of Holbrook's simple assault conviction. The prosecutor argued that this document "is presumed to be . . . sufficient and accurate" proof of the conviction and that the defense could offer proof, as an affirmative defense, that the MCDV was uncounseled. (Trial Tr. vol. 1, 33-35, July 22, 2002.) Defense counsel Collins argued that because the record was silent as to whether counsel was present in the courtroom at the time of the conviction and sentencing, the sufficiency of the conviction under § 921(a)(33)(B)(i)(I) presented a fact question for the jury to determine. (*Id.* at 35-36.) Because the parties presented no definitive case law as to whether or not the sufficiency of the conviction as an MCDV for purposes of § 922(g)(9) was a jury question, I determined to submit it to the jury.

- 13 -

The government offered testimony from the state judge, deputy clerk, and probation officer listed in state court records as having participated in the state court proceedings. These court officials had no personal recollection of Holbrook's trial, but testified that based on the court's general practice, the court records indicated that Holbrook had been represented by a retained attorney named John Farmer.[3] The judge testified that she would not have convicted or sentenced Holbrook without counsel present unless Holbrook had entered a valid waiver of the right to counsel,

---

[3] The Government introduced as an exhibit three documents from the state court records: (1) the criminal complaint issued by the state Juvenile and Domestic Relations Court, sworn out against Holbrook (under her former name of Agnes Bernice Waddell Phillips) by a former husband, Clayton Phillips; (2) the criminal warrant, charging that on December 6, 1988, Holbrook maliciously cut Phillips with the intent to maim, disfigure, disable, or kill; and (3) the judgment form on which the disposition and sentencing were recorded. The judge who presided over Holbrook's case testified that, according to these court documents, Holbrook had appeared in court on the charge on August 11, 1989, pleaded not guilty, and had been found guilty by the judge of simple assault. The judge then ordered a presentence report and ultimately sentenced Holbrook on September 22, 1989. The judgment form is blank in the section marked "Attorney for the Accused"; however, on the complaint, under the heading "Attorney for the Accused," there appears the name "John Farmer R." Judge Wills interpreted this notation as indicating that Holbrook had retained Farmer to represent her.

The court's docket and other records included notations that Farmer had been retained as Holbrook's counsel. Copies of notices of hearings scheduled in Holbrook's case were addressed to Farmer, and the clerk made note of telephone calls received from Farmer as Holbrook's counsel, requesting continuances. The judge also testified that her court had jurisdiction only over cases in which the alleged victim was a spouse or parent of the defendant.

Holbrook was sentenced to twelve months supervised probation, six months of jail time, suspended, and restitution of $46.20.

- 14 -

and nothing in the court's file indicated that Holbrook had waived her right to counsel.

The defense called John Farmer as a witness. Farmer testified that he had no recollection of ever appearing in the case on Holbrook's behalf and had found no ledger card or file in his office indicating that she had retained him to represent her in any case. He testified that he did not believe he had ever been retained by Holbrook, based on the absence of documentation, but that he could not "say one way or the other whether [he had] represented her, or not." (*Id.* at 101-02, 107.)[4]

Holbrook again testified in her own defense. She recalled being in court on a matter concerning her former husband, but she denied having any memory of the day she was convicted of assault, the judge, the attorney whose name was associated with her state court record, what the charge was, or the outcome of the case. She asserted

---

[4] The government also called as a witness the pawn shop sales clerk, James Scott, who testified about his recollection of selling Holbrook a firearm in February 2001. He authenticated the form that Holbrook had filled out in his presence, although he did not remember whether she had asked him any questions during the process. He also identified the firearm that Holbrook had purchased from his shop. Donna Tate, an employee of the Virginia State Police Firearms Transaction Center, testified that Holbrook's application for a firearm purchase had been approved because her prior misdemeanor conviction was in a different name than the name she had used on the forms at the pawn shop. Sheriff's Department Investigator John Woodward testified that he had been present during an April 2001 interview with Holbrook in which she had admitted that she had purchased a .22 caliber handgun at a pawn shop. Woodward testified that Holbrook had indicated that after the gun had been used for target practicing, it "tore up," so she had returned it to the pawn shop to be fixed. (Trial Tr. vol. 1, 146, July 22, 2002.)

that she had spent so much money on divorce attorneys that she did not have funds to hire counsel for the criminal case, but stated that she did not remember whether an attorney might have represented her that day for free.

She testified that although she remembered going to a pawn shop and taking a gun home, she did not remember the clerk or the date, completing any form, or reading or answering the question on the form relating to a prior MCDV conviction.[5] Instead, she indicated that in 2001, if asked whether she had been convicted of a crime of domestic violence, she would have answered, "No," because her conviction was labeled as simple assault, and not as an offense related to domestic violence. She claimed to have no memory of her admission during the first federal trial that she had purposely given a false answer on the form in order to obtain a gun for protection. She stated that the arresting officer had told her that her conviction was a domestic violence offense, and based on that knowledge, she had given her testimony that the answer on the form was false. She claimed that if she had known that her prior

---

[5]  The question on the form read:

Have you been convicted in any court of a misdemeanor crime of domestic violence?  This includes any misdemeanor conviction involving the use or attempted use of physical force committed by a current or former spouse, parent, or guardian of the victim, or by a person with a similar relationship with the victim.

(Trial Tr. vol. 2, 52, July 25, 2002.)

conviction made her ineligible to possess a firearm, she would not have lied on the firearms form. She further testified that she had not filled out an April 2000 job application which included a false response to the question of whether she had ever been convicted of a crime; she claimed her husband had completed the job application form and she had never read the form before signing it.

Holbrook also testified about the medications she had taken around the time of the crime and the first federal trial. She stated that she had started taking the sleep medication Ambien to help her sleep in 2000, and that in 2001, while still taking Ambien, she had experienced memory problems, but could not remember when the memory problems began. She testified that she had not been taking Ambien at the time of the state court assault case in 1989. She indicated that during and after the 2001 trial, the sleep medication had made everything "really fuzzy." (Trial Tr. vol. 2, 56-57, July 25, 2002.) She testified that after she had discontinued use of Ambien, she had noticed a "big change," and had felt more "clear-minded." (*Id.* at 74-75.) Her sister, Lisa Clark, and a friend, Heather Crouse, testified about incidents around the time of the shooting when they had noticed Holbrook having memory problems.

I denied Collins's request to allow Holbrook to testify in detail about her claims that Larry Holbrook had abused her and denied his request for a jury instruction regarding a justification defense. In closing argument, Collins argued that

the jurors should find Holbrook not guilty because (1) she did not know in 2001 that her simple assault conviction qualified as a crime of domestic violence that made her ineligible to buy a firearm, and (2) she was not represented by counsel at the time of her assault conviction. On July 26, 2002, the jury found Holbrook guilty of Count Two.

### 5. Sentencing.

Sentencing as to both counts took place on October 17, 2002. Attorney Collins argued that Holbrook should no longer be bound by the Plea Agreement stipulation that she should be sentenced with reference to the guideline for second degree murder, on the ground that the guideline for voluntary manslaughter was more appropriate under the circumstances. I allowed this untimely objection to the PSR and ruled that Holbrook could argue for sentencing under the voluntary manslaughter guideline. The government contended that the guideline for second-degree murder should apply because the evidence indicated that Holbrook acted with malice. The government's view of the facts was that Holbrook had never reported any physical abuse and had no pictures of injuries caused by abuse by Larry; that she believed Larry had caused her to lose her job, and that same day, she arranged to buy a used firearm from a third party; that she set a trap for Larry on the day he was killed, shot

- 18 -

him from behind as he looked back at her, and moved his body several times, taking steps to make his death look like a suicide.

Holbrook's attorney argued that the voluntary manslaughter guideline should apply because she had suffered from post traumatic stress syndrome and depression caused by Larry's abuse, and she did not know that the nature and quality of her acts were wrong. The defense claimed that after Larry came into her home in violation of a protective order, confronted her with her own gun, and threatened to kill her, she took an opportunity to take back the gun and shot Larry out of fear that he would otherwise carry out his threat.

Based on the evidence, I found that the second-degree murder guideline was applicable to the facts of Holbrook's case. Applying that provision, I sentenced her to 210 months imprisonment, consisting of 120 months on Count One and 90 months on Count Two, to run consecutively.

### 6. The First Appeal.

Attorney Collins represented Holbrook in her first direct appeal. The Fourth Circuit affirmed, 368 F.3d at 426, and denied a Petition for Rehearing, *United States v. Holbrook*, 376 F.3d 259 (4th Cir. 2004). In July 2004, Holbrook filed a motion seeking to remove Collins as her attorney and to proceed pro se. I denied her motion, but a similar motion was later granted by the Fourth Circuit on August 11, 2004.

- 19 -

Holbrook filed a Petition for a Writ of Certiorari with the Supreme Court. On June 20, 2005, the Court granted the Petition, vacated the judgment, and remanded the case for further consideration in light of *United States v. Booker*, 543 U.S. 220 (2005). *Holbrook v. United States*, 545 U.S. 1125 (2005). The Fourth Circuit appointed attorney Sol Rosen to represent Holbrook on the remand. The court ultimately vacated the sentence and remanded for resentencing in light of *Booker* and *United States v. Hughes*, 401 F.3d 540 (4th Cir. 2005). *United States v. Holbrook*, 178 F. App'x 312 (4th Cir. 2006) (unpublished).

### 7. The Second Sentencing and Appeal.

Resentencing was held on August 28, 2006. The government relied on the evidence presented at the original 2002 sentencing hearing. Considering the advisory sentencing guidelines and the factors set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2008), I imposed the same sentence of 210 months to run concurrently with Holbrook's previously imposed state sentences arising from the same events.[6]

---

[6] On September 1, 2006, the government filed a Motion to Correct Sentence, arguing that the federal sentence should be consecutive to the state sentences. Attached to the motion as exhibits were Holbrook's Plea Agreement from the state court case, in which she agreed that she would be sentenced to a mandatory term of three years on the state firearms charge, which would not run concurrently with any other sentence. Also attached to the motion were sentencing orders indicating that on March 11, 2003, the state court sentenced Holbrook to serve seven years and six months of a ten-year sentence on her manslaughter conviction, to run consecutive with any federal sentence which she had received, and three years on the firearm charge to run concurrent to her federal sentence. These documents had not been presented during the sentencing hearing. I denied the government's Motion to Correct

- 20 -

Attorney Rosen filed an appeal from the resentencing, arguing that (1) the court erred in imposing the same sentence, and (2) the Fourth Circuit's practice of reviewing post-*Booker* sentences for "unreasonableness" preserved de facto the mandatory nature of the pre-*Booker* sentencing guidelines. The Fourth Circuit rejected these arguments and affirmed the sentence. *United States v. Holbrook*, 242 F. App'x 29 (4th Cir. 2007) (unpublished). Rosen's motion to withdraw as counsel was granted, and Holbrook filed a pro se Petition for a Writ of Certiorari in the Supreme Court, which was denied. *Holbrook v. United States*, 128 S. Ct. 688 (2007).

8. Holbrook's § 2255 Claims.

In her § 2255 motion, Holbrook alleges the following grounds for relief:

1.   Attorney Rosen was ineffective during the second appeal in failing to submit supplemental briefing on *United States v. Hayes*, 482 F.3d 749 (4th Cir. 2007), a decision by the Fourth Circuit regarding predicate misdemeanor offenses for § 922(g)(9) charges;

2.   This court erred when it allowed the jury to decide whether the predicate conviction was valid;

_____

Sentence as untimely.

- 21 -

3.     Newly discovered evidence about Ambien demonstrates that the medication caused Holbrook to be involuntarily intoxicated;

4.     Newly discovered evidence in the psychological records of the victim verifies that the victim was psychotic and supports a justification defense as well as a mitigation factor for sentencing;

5.     This court erred in accepting Holbrook's Plea Agreement after she stated that she had taken Ambien in the morning just hours before sentencing and was not taking anti-depressants;

6.     Attorneys Kennedy and Dean were ineffective for allowing Holbrook to accept a Plea Agreement while she was on sleeping medication and not taking anti-depressants;

7.     Attorneys Kennedy and Dean were ineffective during pre-trial, trial, and plea proceedings in that they:

     a.     advised Holbrook that she had not violated any laws and set up an interview with the state investigator, which led to the federal charge;

     b.     did not believe in Holbrook's innocence and so did not investigate whether another individual had committed the crime for which the defendant's sentence was enhanced;

- 22 -

c.    stipulated to the predicate misdemeanor offense, knowing that it had been illegally obtained;

d.    advised Holbrook to go to trial because she would win;

e.    brainwashed Holbrook into believing that she was guilty of all acts, but had an excuse;

f.    advised Holbrook's sister and brother-in-law not to testify on her behalf because the prosecutor had threatened them with prosecution if they did so;

g.    failed to present and expose the perjured testimony of Jason Gibson and ATF Agent Lesnak; and

h.    insisted that Holbrook enter into a Plea Agreement with the government.

8.    Attorney Collins was ineffective during pre-trial, trial, and appellate proceedings in that he:

a.    advised Holbrook to withdraw her guilty plea and receive a new trial on all counts, when in fact, she was held to her plea and proceeded to a new trial on the previously dismissed count;

b.    failed to prepare for trial;

- 23 -

      c.      failed to move for dismissal of both federal charges on grounds of insufficient evidence to prove Holbrook had counsel during her prior state misdemeanor case;

      d.      failed to question witnesses properly during trial;

      e.      failed to appeal on all meritorious issues for appeal.

9.      Attorney Collins was ineffective at the sentencing phase in that he:

      a.      failed to request downward adjustments for factors set out in the sentencing guidelines;

      b.      allowed Agent Lesnak to testify at sentencing when previous attorneys had an agreement with the prosecutor that Lesnak would not take the stand;

      c.      failed to retrieve the victim's psychological records to present in mitigation when the prosecution presented testimony concerning the records; and

      d.      failed to present evidence regarding Agent Lesnak's perjury or the false statement from Investigator Woodward concerning the victim's medical records.

- 24 -

In an addendum received on July 18, 2008, Holbrook added the following claim:

> 10.    Based on *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), it is unconstitutional to prohibit Holbrook from possessing a firearm in her own home when she is neither a felon or deemed mentally ill.

## II

To state a claim for relief under § 2255, a federal defendant must prove that one of the following occurred: (1) her sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C.A. § 2255(a). In a § 2255 motion, the defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

### A. WAIVER OF ERROR.

A § 2255 motion is not a substitute for an appeal. Where a defendant attempts to raise new claims in § 2255 proceedings that could have been raised on appeal or

- 25 -

arguments in support of a previously raised claim, review of such issues is barred absent a showing of cause and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). The defendant may show cause for a default by demonstrating that some force outside herself prevented her from learning the facts necessary to bring the claims earlier, although she exercised reasonable diligence to discover such facts. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Errors of counsel may also serve as cause to excuse the procedural default of a specific constitutional claim, but only if the defendant demonstrates that the errors were so egregious that they violated the defendant's constitutional right to effective assistance of counsel, *id.* at 486-88, and that the ineffective assistance claim itself is not procedurally defaulted, *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000). To establish actual prejudice to excuse default, a defendant must show that his counsel's error created "not merely . . . a *possibility* of prejudice," but instead that it "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

To state a claim of actual innocence sufficient to excuse procedural default, a defendant must show that "in light of all the evidence," "it is more likely than not that no reasonable juror would have convicted him" of the underlying crime. *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). Because

"actual innocence" means factual innocence in this context, not merely "legal insufficiency," the government may rebut the defendant's showing of innocence by presenting any admissible evidence of the defendant's guilt as to the challenged conviction or as to other charges dismissed as part of a plea bargain. *Id.* at 623-24.

## B. WAIVER OF § 2255 RIGHTS.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether the waiver is knowing and intelligent depends "upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). When a defendant alleges that ineffective assistance of counsel caused the guilty plea itself to be unknowing or involuntary, analysis of such claims must be part of the court's inquiry into the validity of the guilty plea and the plea agreement waiver of § 2255 rights. *See, e.g., Lemaster*, 403 F.3d at 222; *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) ("Justice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement [waiving § 2255 rights] cannot be barred by the agreement itself—the very product of the alleged ineffectiveness."); *see*

*also Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (finding that the voluntariness of a defendant's guilty plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases).

The court's waiver analysis must focus first on the defendant's statements during the plea hearing. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 221-22. If the court determines that the defendant's allegations, viewed against the record of the Rule 11 plea hearing, are "so palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Id.* at 220 (internal quotations and citations omitted). After determining that statements made during the plea hearing indicated that the defendant had entered a valid guilty plea and waiver of his § 2255 rights, the court in *Lemaster* addressed the defendant's ineffective assistance claims only to the extent that they had some alleged bearing on the validity of the plea. *Id.* at 222-23. The court found that the defendant's allegations contradicted his sworn statements at the plea hearing and, accordingly, upheld the validity of the § 2255 waiver and affirmed the district court's dismissal of all claims as waived. *Id.* at 223. In other cases, however, determining

- 28 -

the validity of the § 2255 waiver will require addressing on the merits the defendant's claims that counsel's ineffective assistance caused the plea to be invalid in some respect.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL.

To prove that counsel's representation was so defective as to require reversal of a conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 688. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694. When the defendant alleges that counsel's error led him to enter an invalid guilty plea, he can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. If it is clear that the defendant has

- 29 -

not satisfied one prong of the *Strickland/Hill* test, the court need not inquire into whether the other prong has been satisfied. *Strickland*, 466 U.S. at 697.

## III

### A. CLAIM FORECLOSED BY SUPREME COURT.

While Holbrook's second appeal on *Booker* issues was pending, the Fourth Circuit decided *United States v. Hayes*, 482 F.3d 749 (4th Cir. 2007), *rev'd*, 129 S. Ct. 1079 (2009). In *Hayes*, the Fourth Circuit found that in order for a conviction to qualify as an MCDV as defined in 18 U.S.C.A. § 921(a)(33) (West 2000 & Supp. 2008) so as to support a conviction under 18 U.S.C.A. § 922(g)(9), "[the] predicate offense must . . . have as an element a domestic relationship." *Id.* at 759.

In Claim 1 of her § 2255 motion, Holbrook argues that her attorney Sol Rosen should have amended his appellate brief to include an argument that under the *Hayes* decision, Holbrook was actually innocent of both counts, and the convictions should be vacated. It is true that the predicate offense used to support Holbrook's conviction under § 922(g)(9) was the misdemeanor crime of simple assault, and the statute under which Holbrook was convicted, Va. Code Ann. § 18.2-57 (Supp. 2008), does not include, as an element of the offense, proof of a domestic relationship between the defendant and the victim. In its response, the government admitted that if the

Supreme Court had upheld *Hayes*, then Holbrook might have been entitled to a

hearing to determine whether she was actually innocent of the conduct required to

support her conviction on Count One.[7]

The Supreme Court, however, found the reasoning of the *Hayes* court to be

unpersuasive and, on February 24, 2009, reversed that decision. *United States v.*

*Hayes*, 129 S. Ct. 1079 (2009). The Court held that the definition of an MCDV in

§ 921(a)(33)(A) does not require the predicate-offense statute to "include, as a

discrete element, the existence of a domestic relationship between offender and

victim." *Id.* at 1084. As the Court stated,

> Most sensibly read, then, § 921(a)(33)(A) defines "misdemeanor crime
> of domestic violence" as a misdemeanor offense that (1) "has, as an
> element, the use [of force]," and (2) is committed by a person who has
> a specified domestic relationship with the victim. To obtain a
> conviction in a § 922(g)(9) prosecution, the Government must prove
> beyond a reasonable doubt that the victim of the predicate offense was
> the defendant's current or former spouse or was related to the defendant
> in another specified way. But that relationship, while it must be
> established, need not be denominated an element of the predicate
> offense.

*Id.* at 1087.

_____

[7] Holbrook also argued that if her prior state conviction did not make it unlawful
under § 922(g)(9) for her to possess a firearm, then her failure to disclose that misdemeanor
conviction on the firearms form did not meet the elements necessary for conviction under
18 U.S.C.A. § 922(a)(6). This section makes it unlawful for a person to make a "false . . .
statement . . . intended or likely to deceive [the seller] with respect to [a] fact *material to the*
*lawfulness of the sale*." § 922(a)(6) (emphasis added).

- 31 -

Holbrook's offense conduct in the 1989 assault case meets the elements under § 921(a)(33)(A) as interpreted by the Supreme Court in *Hayes*. She was convicted of a misdemeanor offense involving the element of force against her husband. Accordingly, that state conviction qualified as a predicate offense under § 922(g)(9), making Holbrook's possession of the firearm unlawful. In turn, her false statement on the firearms form meets the materiality element required for a conviction under § 922(a)(6). Accordingly, I will deny relief as to Claim 1.

### B. HOLBROOK'S WAIVER OF § 2255 RIGHTS.

The government next argues that pursuant to her Plea Agreement, Holbrook waived her right to bring Claims 2 through 9 under § 2255. Paragraph G of Holbrook's Plea Agreement states, in relevant part:

> I waive any right I may have to collaterally attack any sentence imposed in any future proceeding, including but not limited to my rights, if any, under 28 U.S.C. § 2255. I understand that if I pursue any collateral attack of my conviction and sentence, this will constitute a breach of this plea agreement, and entitle the government to any of its remedies under this agreement.

I agree that unless Holbrook asserts some reason that her guilty plea to Count One and the waiver in Paragraph G must be deemed unknowing or involuntary and therefore invalid, the waiver bars § 2255 claims challenging the conviction or sentence on Count One. The government obtained the conviction on Count One

- 32 -

through Holbrook's entry of the plea, pursuant to the Plea Agreement. Thus, Holbrook must reasonably have contemplated that if she later raised § 2255 claims alleging the invalidity of that conviction or sentence, the government could respond by arguing that her challenge was barred under the terms of Paragraph G. Therefore, unless I find that Holbrook has met her burden to show some reason that the guilty plea or the Agreement was invalid, any claims challenging Count One or the sentence on that count that fall within the scope of the waiver may be dismissed as waived.

The government cites no legal authority, however, for extending the scope of the waiver in Paragraph G to encompass § 2255 claims that do not challenge the conviction or sentence on Count One. The government's bargain called for a guilty plea as to Count One and dismissal of Count Two of the Indictment. Holbrook's breach of the Plea Agreement did not affect her conviction on Count One at all. On the contrary, at the most, Holbrook's breach gave the government the right to *try* her on Count Two rather than to dismiss that count pursuant to the agreement. *See Holbrook*, 368 F.3d at 422 n.4 ("the Government's *pursuit* of trial on Count Two in this case is . . . a permissible act authorized by well-established principles of contract law") (emphasis added). Holbrook was convicted on Count Two only after a separate trial and jury verdict. Although Paragraph G purports to waive any right to collaterally attack "*any* sentence imposed in *any* future proceeding" (emphasis

- 33 -

added), it is not broad enough to bar collateral attack of a conviction and sentence so independently obtained. Thus, I find that Holbrook retains the right to raise § 2255 claims regarding the events leading to the breach of her Plea Agreement, the resulting adverse effects of that breach, and the subsequent court proceedings leading to her conviction and sentence on Count Two.

### 1. Valid Guilty Plea and Plea Agreement.

Before accepting Holbrook's guilty plea on August 23, 2001, I questioned her thoroughly to ensure that her plea was knowing and voluntary. Her responses indicated that she understood the proceedings, the charge to which she was pleading, and the consequences of her plea. Her conduct and responses gave me no cause to believe that on that date, she was under the influence of any medication or suffering from depression symptoms that would prevent her from entering a knowing and voluntary guilty plea pursuant to the Plea Agreement. Counsel also indicated no reservations about her competence to enter a guilty plea. Holbrook indicated that she had reviewed the Plea Agreement with counsel and understood and accepted its provisions in exchange for the legal benefits it provided her. I specifically questioned her about her understanding of the provision waiving her right to bring a collateral attack under § 2255. She indicated that she did.

- 34 -

I find now, as I did at the plea hearing, that Holbrook's guilty plea and the waiver of her right to bring a collateral attack under § 2255 were knowing and voluntary and therefore valid as to any claims concerning her conviction or sentence on Count One.

## 2. Claims Bearing on the Validity of the Plea.

Holbrook argues that her guilty plea was invalid because she was not taking prescribed anti-depressants for a previously diagnosed condition and had taken prescription sleeping medication "within hours before sentencing." In Claims 5 and 6, she faults the court and counsel for allowing her to enter the plea under these conditions and asserts that these factors create a reasonable probability that she was incompetent to plead guilty.

Claims 5 and 6 are based on assertions that directly contradict Holbrook's statements during the plea hearing. During that hearing, she affirmed to the court that she had not taken any medications the night before the plea hearing and that she understood the charge, the plea agreement provisions, and the consequences of her plea. She also stated that she was satisfied with counsel's representation. In the face of this record, her claims that the court or counsel should have stopped her plea for mental health reasons are "so patently frivolous or false as to warrant summary

dismissal" absent a showing of extraordinary circumstances. *Lemaster*, 403 F.3d at 220-22.

Holbrook makes no such showing. As stated, neither Holbrook's conduct nor her responses during the trial and the plea hearing indicated that she was not competent to enter the guilty plea on August 23, 2001.[8] Certainly, medication taken "hours before sentencing" had no bearing on her condition at the guilty plea hearing; Holbrook expressly told the court that she had not taken any medication since two nights before the plea hearing.[9] She does not describe any specific symptoms of drug-induced confusion or untreated depression that were evident to counsel outside the courtroom so as to put counsel on notice that her ability to understand and participate in the proceedings was impaired in any way. Finally, Holbrook's allegation that mental problems prevented her from entering a valid plea on August 23, 2001, is contradicted to great extent by the results of the February 2002 competency

---

[8] The test for determining competency is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

[9] Holbrook wants the court to consider research about the delayed effects of Ambien on a patient's state of mind. However, she herself calls this "new evidence" and offers no indication that counsel knew or should have known that medication taken days before the plea hearing might materially affect her ability to understand and participate in the proceedings. Accordingly, the Ambien evidence cannot support the allegation of ineffective assistance in Claim 6.

- 36 -

evaluation that she underwent, which found no evidence that Holbrook suffered from mental illness or defect at the time of the crime and determined that she had no mental illness or defect at the time of testing. Based on this evidence, I find no extraordinary circumstances that mitigate against the conclusion that Holbrook is bound by her plea hearing testimony and that the contradictory allegations in Claims 5 and 6 are so incredible and frivolous as to warrant summary dismissal under *Lemaster*. Therefore, Claims 5 and 6 offer no ground on which to invalidate Holbrook's waiver of § 2255 rights.[10]

Holbrook argues in Claim 7 that counsel should have proceeded differently in preparing and presenting trial evidence on Count One, and if they had, Holbrook would not have pleaded guilty to Count One. The subparts of Claim 7 necessarily rely on assertions directly contradictory to Holbrook's testimony at the plea hearing that she was satisfied with counsel's representation during the presentation of the trial evidence and the plea negotiations; that she understood the charges, the terms of the Plea Agreement, and the consequences of her plea; and that no one had "attempted in any way to force" her to plead guilty. (Plea Tr. 11, Aug. 23, 2001.) Thus, absent

---

[10] Claim 5 is also procedurally defaulted because Holbrook failed to raise the claim on direct appeal. *Bousley*, 523 U.S. at 622. However, because I find that this claim is waived, I need not determine whether Holbrook could show some excuse for her default of the claim on appeal.

- 37 -

extraordinary circumstances, all portions of Claim 7 are so incredible and frivolous as to warrant summary dismissal under *Lemaster*. 403 F.3d at 220-22. Holbrook makes no showing of extraordinary circumstances, and in any event, all subparts of Claim 7 fail under the *Strickland*/*Hill* standard.

In Claim 7(a), Holbrook argues that counsel's decision to arrange for her to be interviewed by the state investigator led to the federal charges. She offers no indication, however, that law enforcement agents investigating the shooting would not otherwise have discovered Holbrook's connection to the murder weapon and her false statement on the firearms form. Therefore, she cannot demonstrate that counsel's decision to set up an interview was either deficient performance or prejudicial to her case.

In the remaining subparts of Claim 7, Holbrook argues that absent counsel's choice of trial strategy and rejection of evidence supporting another theory, she would have let the case go to the jury on both counts during the first trial rather than pleading guilty.

The justification strategy used at trial relied on Holbrook's testimony that Larry's past abusive conduct had caused her to be so afraid for her life that she needed the gun to protect herself and that his conduct in her house on February 23, 2001, had caused her to be so afraid that she shot him to prevent him from killing or

harming her. In Claim 7(d) and 7(e), Holbrook alleges that counsel "brainwashed" her into believing in this theory of the case as the way to "win," although it was contrary to her actual "memory" of events. She asserts that counsel helped her remember details about the day of the shooting so as to mold her memories and, ultimately, her testimony to match the physical evidence. Other than her late-hatched story of confusion and memory loss, Holbrook offers no evidence in support of this brainwashing claim. Moreover, she fails to demonstrate that counsel's justification strategy was an unreasonable one, given the physical evidence and the story to which Holbrook testified at trial. The fact that the evidence, particularly Holbrook's own testimony, did not convince me to allow argument of a justification defense does not prove that counsel's tactics fell below professional norms.

Once the justification defense was not available, counsel could reasonably believe that Holbrook's best option was to accept the Plea Agreement in order to cap the length of her eventual sentence. Holbrook offers no evidence in support of Claim 7(h), and the record strongly supports a finding that she received accurate advice about the advantages of the Plea Agreement over taking her chances with the jury.

Holbrook argues in Claim 7(c) that counsel erred in stipulating to the legality of her prior assault conviction. As discussed, Holbrook argues that proof that she had no legal representation on her prior domestic violence charge would be a complete

defense to both of her federal charges. *See* § 921(a)(33)(B)(i)(I) (providing that "[a] person shall not be considered to have been convicted of [an MCDV] for purposes of this chapter, unless . . . the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case"). Thus, if Holbrook was not represented by counsel in the 1989 case, that simple assault conviction could not provide the basis for the charge that she unlawfully possessed a firearm under § 922(g)(9). Furthermore, her failure to disclose the assault conviction on the firearms form would not have been a "false . . . statement . . . intended or likely to deceive [the seller] with respect to [a] fact *material to the lawfulness of the sale*," so as to support her conviction under Count Two. § 922(a)(6) (emphasis added). In fact, her purchase of the gun would have been lawful. *See, e.g., United States v. Brown*, 235 F. Supp. 2d 931, 939 (S.D. Ind. 2002) (finding that if exemption under § 921(a)(33)(B)(ii) applies to defeat a conviction under § 922(g)(9), then it also defeats conviction under § 922(a)(6) because statement on firearms form would not be false or material to lawfulness of sale).

The record does not reflect any strategic reasons for stipulating to the fact that Holbrook's simple assault conviction qualified as an MCDV under § 922(g)(9). However, I find no resulting prejudice. At the second trial, the government put on extensive evidence in support of the prosecution's theory that Holbrook was

- 40 -

represented by counsel during the 1989 state court proceedings, and the jury found her guilty of making a material false statement in connection with the firearm purchase in violation of § 922(a)(6). A necessary element of that guilty verdict was a finding, beyond a reasonable doubt, that Holbrook was represented by counsel in the assault case, making her possession of the firearm unlawful and her denial of the prior MCDV a "false . . . statement . . . intended or likely to deceive [the seller] with respect to [a] fact material to the lawfulness of the sale." § 922(a)(6).

Holbrook asserts that her sister, Lisa Clark, would have testified that she was present during the state court trial and sentencing and that Holbrook did not hire or have appointed counsel for that case. Holbrook faults counsel for failing to pursue this issue in the first trial. However, if this issue had been raised, the government would have had a strong case, including state court records and testimony from the trial judge, the court clerk, and the probation officer. Given Clark's natural motivation to help her sister's case, her testimony would not have been enough to counterbalance the weight of the government's evidence. Thus, I find no reasonable probability that Clark's testimony would have helped the defense sufficiently to convince a reasonable defendant in Holbrook's position to reject the Plea Agreement as to Count One.

Holbrook argues that instead of the justification defense, counsel should have used cross-examination of Jason Gibson and ATF agent Lesnak,[11] along with testimony from Holbrook's sister and brother-in-law, to persuade the jury that Gibson, and not Holbrook, killed the victim.[12] Holbrook offers several pieces of "evidence" that counsel would have uncovered with more thorough investigation of Gibson: Gibson visited Holbrook in her sister's home several times between the shooting and the indictment and, during those visits, demonstrated his knowledge of numerous details about the shooting, but never mentioned that he had helped Holbrook obtain the gun or that she still owed his cousin money for it; Gibson's alibi

---

[11] Holbrook's § 2255 claim regarding Agent Lesnak is inscrutable. She asserts that counsel made a deal with prosecutors that Lesnak would not testify, instead of presenting and exposing Lesnak's "perjured testimony." However, she does not identify what this alleged perjury was or how presenting it at trial would have been beneficial to her defense. Holbrook's Exhibit R is one page from a report signed by Lesnak after Holbrook's arrest in April 2001. Paragraph 11 indicates that Holbrook "stated that she did fill out the gun purchase forms and did mark the box 'NO' to the question of whether she had ever been convicted of a misdemeanor crime of domestic violence." This information provides no ground for relief under § 2255. To the extent Holbrook is claiming that Lesnak should not have been allowed to testify after he "perjured" himself in some unidentified way, the claim fails since the credibility of witnesses remains the province of the fact finder. *See United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994).

[12] In Claim 7(b), Holbrook asserts that counsel's failure to believe in her innocence caused them to ignore and fail to investigate Jason Gibson (now deceased) as an alternative suspect. Counsel's conduct and not their beliefs are the basis for an ineffective assistance claim under *Strickland*.

- 42 -

could have been discredited;[13] Gibson's testimony about Holbrook's purchase of the murder weapon from his cousin was contradictory to testimony from other witnesses present at that sale; Gibson had a motive to kill Larry, because Larry was dating Gibson's estranged wife; Gibson had "stalked" Larry in the past and had threatened to kill him;[14] Gibson knew about and had access to firearms; Gibson called Larry's cell phone number on February 23, 2001;[15] and Gibson made statements to state and federal law enforcement agents that contradicted his testimony at trial.[16] She argues

_____

[13] Gibson's alibi was that he had been at driving school until 4:30 p.m. on the afternoon of Larry's death. Holbrook asserts that defense counsel never investigated whether Gibson's class was dismissed early on February 23, 2001, such that he would have had time afterward to go kill Larry. Her Exhibit T is a handwritten note, possibly about a conversation with the driving class instructor, indicating that class ending times were flexible.

[14] Holbrook's Exhibit P is a handwritten note, signed by Pande Fannon (whose relationship to the case is not explained), stating:

> Larry told me that the reason that he bought his gun was because Jason had told him that he was going to kill him. Larry told me that he really couldn't afford to buy the gun but he felt he needed to.

The trial evidence indicated that investigators found a gun in Larry's car, which was parked in front of Holbrook's home.

[15] Holbrook's Exhibit Q is a record of telephone calls made from Jason Gibson's cell phone from February 22 to 25, 2001. Holbrook's note on this record indicates that Larry's cell phone number was 540-276-6014. The record indicates that a call was made on February 23, 2001, to 540-275-6014.

[16] Holbrook's Exhibit S consists of unlabeled portions of notes apparently regarding Gibson's statements to law enforcement or to counsel. These notes indicate, contrary to Gibson's trial testimony, that he "assumed" Holbrook wanted a gun because she was "afraid." Exhibit T appears to be notes from another interview, indicating that the class

- 43 -

that if counsel had presented this evidence during trial, she would not have pleaded guilty.

Counsel's failure to fully investigate available evidence and viable defenses before advising a client to accept a guilty plea may raise a claim of ineffective assistance under *Hill*. *See* 474 U.S. at 59-60. The relevant inquiry is whether, objectively, the unexplored evidence or defense would likely have succeeded at trial so as to create a reasonable probability that absent counsel's omission, the defendant would have decided to reject a guilty plea and proceed to trial using that evidence or defense. *Id.*

I cannot find that Holbrook has established a claim of deficient conduct here. She does not demonstrate that counsel's warning that family members who testified might be indicted was without basis in fact. She also does not show that Gibson's driving class was dismissed earlier than 4:30 p.m. on February 23, 2001. Without poking such a decisive hole in Gibson's alibi, her defense theory that he was a viable suspect fails utterly. Moreover, the evidence of Gibson's motive for killing Larry, his knowledge of guns, and his contradictory statements, without any evidence tying him to the scene of the crime itself, could not have overcome the government's substantial

Gibson used as his alibi for the night of the murder was sometimes dismissed as early as 3:00 p.m., rather than at the posted dismissal time of 4:30 p.m.

- 44 -

evidence pointing to Holbrook as the killer. All told, I cannot find any reasonable probability that if counsel had only followed Holbrook's proffered strategy of casting doubt on her guilt by implicating Gibson, the defense would have been so clearly successful that she would have rejected the Plea Agreement benefits and insisted on sending the case to the jury.

Not only do the subparts of Claim 7 thus fail under *Strickland* and *Hill*, but they also fail to present extraordinary circumstances rendering Holbrook's Plea Agreement waiver of § 2255 rights invalid and the waiver stands. I will thus deny relief as to Claims 5, 6, and 7.

## C. NEW EVIDENCE.

Holbrook argues that two sets of "newly discovered" evidence entitle her to a new trial on Count One, as follows:

1. Recently disclosures of side effects caused by the sleep medication Ambien indicate that Holbrook was involuntarily intoxicated during the crime, the first trial, the guilty plea, and the proceeding to withdraw her guilty plea; as such, she could not be criminally liable for her crimes and could not have entered a valid guilty plea, so must receive a new trial;[17]

---

[17] Holbrook submits as Exhibit B portions of advertisements for Ambien and articles about anecdotal evidence of its newly disclosed side effects. She points to the following possible side effects that she may have suffered from while taking the medication: memory impairment that extends into the day following use of the medication; a drugged side effect that can last into that next day after use, making it dangerous to drive or operate machinery; somnolence, which Holbrook defines as a "combined condition of sleeping and wakefulness

2. Psychological records of the victim from his ongoing treatment for Post Traumatic Stress Syndrome recently disclosed to the defendant reflect that in March 2000, the victim was suffering a psychotic state.

Holbrook asserts that the new evidence about the possibility that her sleep medication altered her state of mind proves that she was mentally incompetent to plead guilty, making her guilty plea invalid, and mandating that she be retried on Count One.[18] She also asserts that the victim's psychological records support her justification defense to Count One.

I have already found that claims challenging the validity of Count One are waived under Holbrook's valid waiver of § 2255 rights, unless they themselves bear

_____

producing a temporary state of involuntary intoxication to the extent that it destroys moral agency"; and sleep-driving or other activities performed while still asleep, with no memory of the event afterward.

[18] One of the cases that Holbrook cites in support of this claim involves a motion for new trial under Federal Rule of Criminal Procedure 33. *United States v. Kladouris*, 739 F. Supp. 1221 (N. D. Ill. 1990). I cannot consider her current claims under Rule 33, because more than three years have passed since her conviction. *See* Fed. R. Crim. P. 33(b)(1). The other case cited by Holbrook, *United States v. Davis*, 183 F.3d 231 (3d Cir. 1999), is also not on point. *Id.* at 250-55 (finding, on direct appeal, that the district court should have instructed the jury as to the defendant's intoxication defense where there was substantial evidence at trial that the defendant may have been intoxicated from alcohol during the alleged specific intent crime).

- 46 -

on the validity of the guilty plea.[19]  Holbrook argues that her new evidence invalidates

her plea.  I cannot agree.

The Due Process Clause prohibits trying and convicting mentally incompetent

defendants.  *Pate v. Robinson*, 383 U.S. 375, 384-86 (1966).  The test for determining

competency is whether a defendant "has sufficient present ability to consult with his

lawyer with a reasonable degree of rational understanding . . . and whether he has a

rational as well as a factual understanding of the proceedings against him."  *Dusky*,

362 U.S. at 402.

> [A] defendant raising a substantive claim of incompetency is entitled to
> no presumption of incompetency and must demonstrate his
> incompetency by a preponderance of the evidence.  Not every
> manifestation of mental illness demonstrates incompetence to stand trial;
> rather, the evidence must indicate a present inability to assist counsel or
> understand the charges.  Similarly, neither low intelligence, mental
> deficiency, nor bizarre, volatile, and irrational behavior can be equated
> with mental incompetence to stand trial.

*Walton v. Angelone*, 321 F.3d 442, 459-60 (4th Cir. 2003) (internal citations and

quotations omitted).

Holbrook argued during her attempt to withdraw her guilty plea that her mental

state during the first trial and plea hearing was altered in such a way by sleep

medication and lack of depression medication that it prevented her from

---

[19]  These claims do not fall under any of the recognized exceptions to an otherwise
valid waiver of § 2255 rights.  *See Lemaster*, 403 F.3d at 220 n.2.

- 47 -

understanding and participating meaningfully in these proceedings. However, the mere fact that she was taking sleep medication and not taking anti-depressants is not determinative of her competence to plead guilty. The court must consider all the evidence concerning her mental state at the time of the plea. Based on her conduct at the first trial and plea hearing and the results of two psychiatric evaluations performed on Holbrook in early 2002, I did not "find that she entered her plea in some unknowing or involuntary way" and denied her Motion to Withdraw Plea. (Hearing Tr. 34-35, May 9, 2002.) When Holbrook put on evidence at the trial on Count Two about her mental state, attempting to excuse her misrepresentation on the firearms form, the jury found against her. Now, Holbrook believes that adding the Ambien evidence to all the previously presented evidence will sway the balance to persuade me that she was incompetent to enter the plea.

The Ambien evidence offers no compelling reason why Holbrook should not be bound by her statements during the plea hearing. The unlabeled product information and articles she provides about the drug indicate that neurological side effects, such as an intoxicated feeling or somnambulism, are rare (occurring in less than 1 in 1000 patients). Her documents indicate that the sleep walking behaviors are simply "reported" by Ambien users and not recognized as a side effect through controlled testing. The mere fact that Holbrook was taking this drug during the

period in question does not show that it altered her mental state to any relevant degree. To support her claim that she herself actually suffered any of the noted neurological side effects from taking Ambien, Holbrook offers only (1) her own self-serving testimony that she does not remember many of the events surrounding the shooting, first trial, guilty plea, and attempt to withdraw the plea, and (2) testimony from her sister and Heather Crouse, a friend, that they had noticed Holbrook's purported memory problems.

Taking this evidence along with the mental health experts' reports and testimony during all prior proceedings, I cannot find by a preponderance of the evidence, under the appropriate legal standard for competency, that Holbrook was unable to assist counsel or understand the charges when she entered her guilty plea. *See Walton*, 321 F.3d at 459-60. Accordingly, she is still bound by the waiver of § 2255 rights included in her Plea Agreement, and Claim 3 is waived.

I also find the records about the victim's psychological treatment insufficient to affect the validity of Holbrook's waiver of § 2255 rights. To assert a defense of justification, the defendant must produce evidence that would permit the jury to conclude that: (1) the defendant was under an unlawful and present threat of death or serious bodily injury, (2) she did not recklessly place herself in a situation where she would be forced to engage in criminal conduct, (3) the defendant had no reasonable

- 49 -

legal alternative (to both the criminal act and the avoidance of the threatened harm), and (4) there existed a direct causal relationship between the criminal action and the avoidance of the threatened harm. *United States v. Crittendon*, 883 F.2d 326, 330 (4th Cir. 1989). The Fourth Circuit construes the justification defense for possession of a firearm "very narrowly." *United States v. Perrin*, 45 F.3d 869, 875 (4th Cir. 1995).

I rejected Holbrook's justification defense because I found she had not demonstrated that she was under any immediate threat from the victim at the time she committed the federal offenses of unlawful firearm possession and misrepresentation on the firearms form. The new evidence provides no ground on which I would alter my conclusion. The March 2000 doctor's note states that Larry Holbrook reported experiencing an "apparent change of the flashback syx [sic] to a seeming-psychotic state of believing the enemy figure (which once he would've dismissed) is present and, as he now acts on nightmare residue, fears acting toward the flashback material." (2255 Ex. O at 4.) The note also indicates that the physician recommended, and Larry agreed, to a trial use of the medication Seroquel. A note from June 2000 indicates that Larry reported that he was "not suicidal or homocidal" and had had "better sleep and perhaps less frequent flashbacks since starting Seroquel." (*Id.* at 2.)

- 50 -

Even considering the new evidence about Larry's flashbacks along with all the other evidence about his abusive conduct and threats toward Holbrook, I am not persuaded that a justification instruction would be warranted as to the § 922(g)(9) charge.[20] Because the psychiatric evidence thus does not change the factual and legal landscape on which Holbrook decided to plead guilty to Count One or otherwise invalidate her guilty plea, I find no compelling reason that she should not be bound by her in-court statements indicating that her guilty plea to Count One was knowing and voluntary. Thus, I find Claim 4 to be waived under Holbrook's valid Plea Agreement.[21]

### D. MCDV AS A JURY ISSUE.

Holbrook asserts that the judgment on the simple assault charge on its face proves that she was not represented by counsel and that the state charge thus did not qualify as an MCDV under § 922(g)(9) and § 921(a)(33).[22] She argues in Claim 2

---

[20] Holbrook does not demonstrate that she knew anything about Larry's having been diagnosed as "psychotic" at the time she purchased the firearms, let alone that this knowledge caused her to be more fearful of him and therefore justified in buying a gun to meet the threat he posed.

[21] Because Holbrook's remaining claims relate to her conviction on Count 2 or her joint sentencing hearing on the two counts, I do not find these claims to be barred by her Plea Agreement waiver of § 2255 rights.

[22] The government's argument that lack of representation on a prior conviction cannot be a defense in a prosecution for unlawful gun possession is not well taken, because it relies on case law involving statutes prohibiting gun possession after being convicted of a felony.

that the court should have decided this legal question without sending the issue to the jury in her second trial.[23]  The government contends that Holbrook procedurally defaulted Claim 2 because she did not argue this claim in her first appeal.  I agree that the claim is defaulted and that I may not address its merits unless Holbrook demonstrates cause and prejudice or actual innocence. [24]  *Bousley*, 523 U.S. at 622.

As cause for the default, Holbrook argues that attorney Collins was ineffective in not presenting Claim 2 on direct appeal.  As stated, at the time of Holbrook's trial

---

The statutory scheme under which Holbrook was convicted of unlawful gun possession after being convicted of an MCDV expressly states that an uncounseled prior misdemeanor conviction cannot qualify as a prior MCDV, absent proof that the defendant waived the right to counsel.  18 U.S.C.A. § 921(a)(33)(B)(i)(I).

[23]  Jury Instruction 12 at the second trial read as follows:

A "misdemeanor crime of domestic violence" means a crime that is a misdemeanor under state law and has as an element the use or attempted use of physical force or the threatened use of a deadly weapon committed by a current or former spouse of the victim, regardless of the name of the crime under state law.

A person must not be considered to have been convicted of such a crime unless the person was represented by a lawyer in the case or knowingly or intelligently waived the right to a lawyer in the case.

[24]  The government argues that the error alleged in Claim 2 is a "nonconstitutional error" and accordingly, to excuse her default of the claim on direct appeal, Holbrook must show not only cause and prejudice, but also demonstrate that the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  Because I find no prejudice, I need not address this argument.

- 52 -

on Count Two, the parties found no case law directly on point. It is now established that

> [b]ecause § 921(a)(33) sets forth a legal definition, the trial judge rather than the jury should determine whether a particular conviction is admissible as relevant evidence of a misdemeanor crime of domestic violence. This is true even though the trial judge's ultimate decision to admit or not to admit a prior conviction may require a factual showing.

*United States v. Bethurum*, 343 F.3d 712, 717 (5th Cir. 2003) (internal citations omitted); *United States v. Gordon*, 264 F. App'x 274, 277 (4th Cir. 2008) (unpublished) ("It is well settled that the issue of whether a prior misdemeanor conviction for domestic violence qualifies as a predicate offense pursuant to 18 U.S.C. § 921(a)(33)(B)(i)(II) is a question of law for the court to decide.") (citing *Bethurum*, 343 F.3d at 716); *United States v. Stanko*, 491 F.3d 408, 412-13 (8th Cir. 2007)); *see also United States v. Clark*, 993 F.2d 402, 406 (4th Cir. 1993) (finding that 18 U.S.C.A. § 921(a)(20) sets forth a legal definition of what constitutes a predicate offense under § 922(g) and is not an essential element of the offense).

I need not determine whether Collins's failure to argue Claim 2 on appeal constituted deficient performance under *Strickland*, however, because I find no prejudice here. Holbrook offers no authority for her argument that the face of the judgment document alone decides the question of whether or not her simple assault conviction meets the definition under § 921(a)(33). On the contrary, logic dictates

- 53 -

that the court will often be required to engage in fact finding to determine whether a prior conviction qualifies under this section. *See*, *e.g.*, *Bethurum*, 343 F.3d at 717-18 (finding that defendant entered a knowing waiver of right to counsel for the predicate MCDV from evidence about that judge's routine procedures).

A reasonable judge could clearly find beyond a reasonable doubt from the evidence presented at the second trial that Holbrook was represented by counsel during the 1989 state criminal proceedings in which she was convicted of simple assault against her first husband. Therefore, had her attorney made a timely objection at trial and raised the issue on appeal, I find no reasonable probability that the claim would have succeeded in obtaining a different outcome in either proceeding. *See Murray*, 477 U.S. at 489-90 (finding that ineffective assistance for failing to appeal a given issue must be determined under *Strickland* standard of deficient performance and prejudice); *Jones v. Barnes*, 463 U.S. 745, 754 (1983) (finding that counsel has no constitutional duty to raise on appeal every non-frivolous issue requested by defendant). As Holbrook cannot show under *Strickland* that attorney Collins's omission of the Claim 2 issue on appeal violated her constitutional rights, that omission cannot serve as cause to excuse her default of Claim 2. *Murray*, 477 U.S. at 486-88. She offers no other cause related to the default of this claim.

- 54 -

I must also consider whether Holbrook has shown actual innocence as a means of circumventing her default of Claim 2.  To do so, she "must show that it is more likely than not that no reasonable juror would have convicted [her] in light of the new evidence" not presented at trial.  *Schlup*, 513 U.S. at 327.  Holbrook offers three pieces of new evidence: (1) documentation of Ambien side effects, (2) the victim's mental health records, and (3) her sister's testimony that Holbrook did not have counsel for her state misdemeanor conviction.  I have already held that (1) and (2) do not significantly change the weight of the evidence regarding either the defense of mental incapacity or the defense of justification and that (3) does not outweigh other evidence presented during the second trial that Holbrook's prior state misdemeanor conviction was counseled.   Thus, I cannot find that these three pieces of evidence, even added together with all other evidence, meet the *Schlup* standard so as to show actual innocence and excuse default of Claim 2.  Holbrook simply has not shown that this evidence would make it more likely than not that no reasonable juror would find her guilty of the federal charges.  I will accordingly deny relief as to Claim 2.

E.  Ineffective Assistance by Counsel Collins.

In Claims 8 and 9, Holbrook alleges that Collins, the attorney she retained after her guilty plea, provided ineffective assistance in several different ways during the subsequent stages of her criminal proceedings.  While some of these claims are

- 55 -

clearly without merit and may be dismissed, I find that one requires further factual development.

### 1. Motion to Withdraw Plea.

First, in Claim 8(a), Holbrook asserts that Collins provided deficient representation when he advised her to move to withdraw her guilty plea to Count One. This advice was disastrous for Holbrook. Within days of the motion being docketed, the government informed Collins of its intention to hold Holbrook to her guilty plea on Count One and try her on Count Two. Nevertheless, Collins did not move to withdraw the motion, which I denied. As a result, Holbrook lost the benefit of having Count Two dismissed and ended up with a sentence nearly eight years longer than she would have had absent the attempt to withdraw her plea.

It is clear from the facts of this case that Holbrook's former attorneys had obtained a beneficial deal for her in the Plea Agreement negotiated during her first trial. Once the court refused to allow the jury to consider her justification defense, she was most likely to be convicted of both crimes. The Plea Agreement capped her possible sentence by removing Count Two. Her breach of the Plea Agreement caused her to lose that substantial benefit.

The government argues that Collins could not have known that the court would rule in the government's favor on its interpretation of the Plea Agreement and

- 56 -

Collins should not be found ineffective simply because the strategy failed so miserably.

It is true that in habeas proceedings, the reviewing court must be highly deferential to counsel's reasonable strategic decisions, in order to avoid the distorting effect of hindsight. *Strickland*, 466 U.S. at 688-89. At this point, however, the record does not include any evidence showing the circumstances by which the attempt was made to withdraw the plea. Accordingly, I will conduct an evidentiary hearing on this issue.

### 2. Witnesses and Sufficiency of the Evidence.

In Claim 8(b), Holbrook faults attorney Collins for failing to disclose to her or her witnesses what strategy he was following during the trial of Count Two. As a result, she alleges, Lisa Clark did not know to include in her testimony the fact that she was present in state court with Holbrook in 1989 and that Holbrook had no counsel for that case. Holbrook argues in Claims 8(c) and 8(d) that Collins should have questioned witnesses differently during the trial on Count Two so as to provide support for the argument that there was insufficient evidence that Holbrook had counsel for her 1989 state conviction. However, she does not point to any specific question that counsel should have asked or explain how such a question would have resulted in a different outcome at trial.

- 57 -

It is well established that testimony about standard court procedures is admissible on the question of whether a defendant was represented by counsel or entered a valid waiver of the right to counsel on a prior state conviction related to a federal charge of unlawful gun possession. *See*, *e.g.*, *Bethurum*, 343 F.3d at 717-18. In this case, the government offered such testimony as a means of explaining documentation from the 1989 case file that was ambiguous as to whether or not Holbrook had counsel. I have already found no reasonable probability that, in light of the government's evidence, Lisa Clark's testimony would have resulted in a different outcome on this issue. As Holbrook fails to show prejudice under *Strickland* resulting from Collins's other alleged omissions regarding witnesses, I will grant the Motion to Dismiss as to Claims 8(b) and (d).

For the same reasons, I find no indication that a motion for judgment of acquittal as to Count Two on the ground of insufficient evidence had any reasonable chance of succeeding. Accordingly, Claim 8(c) also fails under *Strickland* and must be dismissed.

### 3. Failure to Raise all Meritorious Issues on Appeal.

Counsel is not constitutionally required to raise every nonfrivolous issue on appeal, even when his client asks him to do so. *Jones*, 463 U.S. at 754. To prove a claim of ineffective assistance on appeal, then, the defendant must prove that counsel

was unreasonable in failing to include the desired issue in the appeal brief, as compared to the issues that he did include, and that absent his omission, there is a reasonable probability that the outcome on appeal would have been different. *Strickland*, 466 U.S. at 694. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751-52.

Collins chose to raise three issues on direct appeal: (1) "the district court deprived [Holbrook] of her constitutional rights when it interpreted the Agreement to allow the Government to refuse to dismiss and proceed to trial on Count Two, while refusing to relieve her of the consequences of her performance—*i.e.*, her plea of guilty to Count One"; (2) "the second trial on Count Two violated the Double Jeopardy Clause . . . because the jury previously had been empaneled and heard evidence on that count;" and (3) "the district court erred in finding at sentencing that she acted with malice in killing Larry Holbrook." *Holbrook*, 368 F.3d at 420. The Fourth Circuit discussed the claims at some length in its opinion, particularly the first claim, and ultimately affirmed the convictions and sentence. *Id.* at 426.

In Claim 8(e), Holbrook asserts that Collins was ineffective for failing to appeal on all meritorious issues. I cannot find Collins ineffective for failing to raise

- 59 -

an appeal on every issue Holbrook mentions in her § 2255 brief. I also do not find that he was unreasonable in failing to raise the two claims Holbrook specifically mentions: sufficiency of the evidence and "the materiality of her withdrawal of her guilty plea." (Def.'s Br. 16.)

Holbrook waived her right to argue or appeal the sufficiency of the evidence as to Claim One when she entered her guilty plea on that count. Moreover, she admitted during the first trial that she had possessed firearms illegally and had lied on the firearms form. These admissions from the first trial were also admitted into evidence at the second trial. I have also found that the evidence was sufficient to support a finding that her prior MCDV was counseled. Thus, her misrepresentation on the firearms form as to that prior conviction was either intended or likely to deceive the seller as to a key factor in determining the lawfulness of the sale. For these reasons, I cannot find that counsel had such a strong appellate argument regarding insufficiency of the evidence that his decision to pursue other nonfrivolous issues on appeal was an unreasonable appellate strategy.

Holbrook next argues that Collins should have argued on appeal that the motion seeking to withdraw Holbrook's guilty plea was not a material breach of the Plea Agreement. In support of this argument, she points to the dissenting opinion by

Judge King in the first, unsuccessful appeal. *Holbrook*, 368 F.3d at 426-33.  The

dissent noted:

> Holbrook's objection to trial [on Count Two] was based primarily on her
> contention that her *unsuccessful* attempt to withdraw the guilty plea did
> not constitute a material breach.  The materiality issue is not raised in
> this appeal, however, and thus is not subject to review in this
> proceeding.  I have reservations, however, on whether an unsuccessful
> effort to withdraw a plea could constitute a material breach.  A material
> breach is one going to the root or essence of the agreement or a failure
> to do something that is so fundamental to a contract that the failure to
> perform that obligation defeats the essential purpose of the contract.
> Notwithstanding Holbrook's unsuccessful attempt to withdraw her plea
> to Count One, the essential purpose of the Agreement remained intact.

*Id.* at 427 n.2 (internal citations and quotations omitted).

The record reflects that Collins conceded on appeal that Holbrook's attempt to

withdraw her guilty plea constituted a material breach of the Agreement as to Count

One.  *Id.* at 421.  Collins argued that

> [b]y allowing the Government to try [Holbrook] on Count Two without
> first voiding the Agreement . . . the district court frustrated the bargain
> as she perceived it—the Government received its principal benefit, her
> plea of guilty as to Count One, while she was denied her principal
> benefit, the dismissal of Count Two.

*Id.*  The Fourth Circuit found that the terms of the Plea Agreement allowed for the

remedy chosen by the government.  *Id.* at 424.

I do not agree that the materiality of the breach was a stronger argument for

Holbrook on appeal than the issues Collins chose to raise.  The determination of

whether a contract breach is material—so as to hold the nonbreaching party to the duty of performance—should include consideration of "the extent to which the injured party will be deprived of the benefit which [it] reasonably expected." Restatement (Second) of Contracts § 241(a) (1981). The benefits for which the government bargains in offering the defendant a Plea Agreement center on limiting expenditure of scarce resources while assuring the finality of the criminal process. *Hartman v. Blankenship*, 825 F.2d 26, 28 (4th Cir. 1987).

Holbrook's attempt to withdraw her guilty plea called the finality of the plea proceedings into question, caused a seven-month delay in the proceedings, and greatly increased expenditures of time, effort, and money on the part of the United States in defending against her motion. Thus, two central advantages of the agreement from the government's perspective were both diminished by Holbrook's attempted withdrawal. Based on the circumstances in this case, Holbrook's breach of the Plea Agreement was material, and as such, I find that Collins's decision to abandon the materiality argument on appeal was a reasonable strategy. Moreover, given the majority vote of the appellate panel in favor of enforcing the Plea Agreement in the manner chosen by the government, I cannot find prejudice under *Strickland*. I will deny Claim 8(e).

4. Ineffective Assistance at Sentencing.

In Claim 9, Holbrook claims that Collins should have done several things differently during the sentencing hearing in October 2002. The government argues that these claims are moot. The Supreme Court vacated sentence imposed in 2002, and the case was ultimately remanded for resentencing under *Booker*. At the second sentencing hearing on August 28, 2006, Holbrook could have made any or all of the arguments that she claims Collins should have made at the first sentencing. Thus, she cannot show prejudice resulting from Collins's representation during that first sentencing, and Claim 9 fails under *Strickland*.

F. SECOND AMENDMENT CHALLENGE.

In June 2008, the Supreme Court struck down the District of Columbia's ban on certain handgun possession as violative of the Second Amendment. *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008). The Court ruled that "the District's ban on handgun possession in the home . . . [and] its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense" impermissibly burdened the defendant's personal right under the Second Amendment to bear arms. *Id.* at 2821-22. The Court expressly noted that the right to bear arms is "not unlimited" and that

- 63 -

> nothing in [the *Heller*] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 2816-17. These "presumptively lawful regulatory measures" were identified "only as examples," not as an exhaustive list. *Id.* at 2817 n.26.

In reliance on *Heller*, Holbrook filed an addendum to her § 2255 motion on July 18, 2008, stating that it was "unconstitutional to prohibit [her] from possessing a firearm within her own home when she is neither a felon or deemed mentally ill." (Claim 10). The claim is unsupported. The Court in *Heller* expressly stated, in overturning the D.C. firearms ban, that other prohibitions on firearm possession by certain persons or in certain places remain "presumptively lawful." *Id.* at 2817 n.26. Thus, the *Heller* opinion itself does not "cast doubt" on the limitation on firearm possession set forth in § 922(g)(9), and Holbrook makes no other argument that her convictions are violative of the Second Amendment. I will deny Claim 10 accordingly.

IV

For the stated reasons, it is **ORDERED** as follows:

- 64 -

1.     The government's Motion to Dismiss (#150) is GRANTED in part and DENIED in part;

2.     Claims 1 through 7 and 8(b) through 10 of the defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 are DISMISSED;

3.     The sole remaining claim, Claim 8(a), alleging ineffective assistance by attorney Collins with regard to Holbrook's attempt to withdraw her guilty plea, will be set for an evidentiary hearing; and

4.     The Clerk shall arrange for the appointment of counsel to represent the defendant and shall set the matter for an evidentiary hearing at the court's earliest convenience on the sole remaining claim.


ENTER: May 11, 2009

/s/ JAMES P. JONES
Chief United States District Judge

- 65 -