# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 2:01CR10023 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| | ) | By: James P. Jones |
| **AGNES HOLBROOK**, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

*Anthony P. Giorno, Assistant United States Attorney, Roanoke, Virginia, for the United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

Agnes Holbrook, a federal inmate, filed pro se a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2009). She challenged her convictions and sentence for possession of a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C.A. § 922(g)(9) (West 2000) (Count One), and making a false statement in order to obtain a firearm in violation of 18 U.S.C.A. § 922(a)(6) (West 2000) (Count Two).

After the United States responded to the § 2255 motion, and upon review of the record, I dismissed all of the defendant's claim but one—that her attorney had provided ineffective assistance with regard to her unsuccessful attempt to withdraw her guilty plea, resulting in a longer sentence. *United States v. Holbrook*, 613 F.

Supp. 2d 745, 776-77 (W.D. Va. 2009). Counsel was appointed for Holbrook and the remaining claim was the subject of an evidentiary hearing held on November 2, 2009. The parties have now briefed the issues and the remaining claim is ripe for decision. This Opinion contains my findings of fact. I have taken into account the testimony given at the hearing on November 2, 2009, the extent of detail and coherent nature of such testimony, the manner of testifying by the witnesses, and the degree to which the testimony is consistent or inconsistent with other record evidence in the case.

Based on the facts found and the legal conclusions flowing therefrom, I conclude that the defendant was denied the effective assistance of counsel in connection with the attempted withdrawal of her guilty plea, to her prejudice. I will therefore grant her motion by vacating her conviction and sentence on Count Two.

I

In addressing Holbrook's initial direct appeal, the United States Court of Appeals for the Fourth Circuit summarized the facts in her case as follows:

> The charges against Holbrook in this case arise out of the March 24, 2001, shooting death of her husband, Larry. In the months prior to March 2001, Holbrook and Larry had separated and had become embroiled in a bitter divorce. Both had filed motions for protective orders against each other on numerous occasions, Larry had started a relationship with another woman, Stephanie Gibson, and he had told several individuals that he was removing Holbrook as a beneficiary of

his government benefits and life insurance policies. On February 19, 2001, Holbrook purchased a .22 caliber pistol from a federally licensed firearms dealer in Pennington Gap, Virginia. In filling out the required screening paperwork, Holbrook indicated that she never had been convicted of a misdemeanor crime of domestic violence, an offense that disqualifies persons from possessing firearms, *see* 18 U.S.C.A. § 922(g)(9). In fact, she previously had been convicted of assaulting her former husband, Clay Phillips, with a knife. Because Holbrook committed this prior offense when her name was Agnes Bernice Phillips, the record check performed by the dealer did not reveal the conviction, and the dealer sold her the firearm. After test-firing the pistol several days after purchasing it, Holbrook determined that the gun was in need of repairs and had a friend return it to the dealer.

A few weeks later, on March 5, 2001, Holbrook lost her job. Her employer, the Department of Social Services for Lee County, Virginia, forced her to resign after discovering that she had lied on her job application about her criminal history. Holbrook believed that her employer had made this discovery as the result of a tip from Larry.

That same day, Holbrook set out to acquire a second firearm. Almost immediately after resigning from work, Holbrook called a friend, Jason Gibson (the estranged husband of Larry Holbrook's paramour, Stephanie Gibson), to inquire about obtaining a firearm. Gibson eventually took Holbrook to the residence of his cousin, Steve Wuderman, who sold Holbrook a .357 magnum handgun. Wuderman was not a licensed firearms dealer. Holbrook test-fired the weapon, made payment arrangements, and left the Wuderman residence with Gibson.

On March 24, 2001, Holbrook used the .357 magnum to shoot and kill Larry in a dispute in the bedroom of her home. The precise details of the shooting remain somewhat a mystery because Holbrook was the only witness to the shooting, and, as explained below, her version of events has changed significantly over time. Some facts about the events of that date, however, are undisputed. First, record evidence indicates that on the date of the shooting, Larry had been seen in a light-hearted

mood, and he had told someone that he was going to pick up his kids to go play ball. Second, although it is unclear from the evidence why Larry drove to Holbrook's residence on March 24, the evidence does show that Larry had a firearm in his car when he arrived at the Holbrook residence and that he left that firearm in the car when he went inside. Finally, evidence in the record shows that Holbrook did not call the police until shortly after 6:00 pm, although neighbors testified that they heard a single gun shot between 4:00 pm and 4:45 pm.

Initially, Holbrook told investigators that Larry had committed suicide in front of her. The investigators' examination of the forensic evidence, however, led them to question Holbrook's truthfulness. For example, their investigation found that Larry Holbrook had no gun-powder residue on his hands and his fingerprints were not found on the weapon; Larry's body had been moved at least three times after death; and evidence indicated that the murder weapon had been wiped clean.

Later, at her first trial, and only after being confronted with the forensic evidence described above, as well as evidence linking the murder weapon to her, Holbrook admitted that she had shot Larry. According to Holbrook's trial version of events, Holbrook exited the bathroom of her home, and saw Larry standing in the hallway with her .357 magnum, which, Holbrook explained, Larry must have found in its hiding place behind her dresser mirror. Larry then threatened to kill her and a stand-off ensued. The couple ended up in the bedroom with Larry on his knees on the floor and Holbrook on the bed. When Larry laid the pistol on the bed, she grabbed the weapon and shot Larry once in the face in an act of self-defense.

At her second trial, Holbrook recanted much of this version of events, testifying that although she may have killed Larry, she had no recollection of exactly what happened.

*United States v. Holbrook*, 368 F.3d 415, 416-18 (4th Cir.), *reh'g and reh'g en banc*

*denied*, 376 F.3d 259 (4th Cir. 2004)*, rev'd*, 545 U.S. 1125 (2005).

In the defendant's first trial, after Holbrook had testified in her own defense, and after I had ruled against a justification defense, Holbrook decided to plead guilty. She entered into a written Plea Agreement with the government, by which she agreed to plea guilty to Count One, the possession charge, and the government agreed to dismiss Count Two, the false statement charge. Because of the agreed dismissal of Count Two, this arrangement capped Holbrook's possible sentence at ten years. On August 23, 2001, after a hearing, the plea was accepted, the jury discharged, and a date for sentencing fixed.[1]

Prior to the sentencing, Holbrook discharged her attorneys, Richard D. Kennedy and Kristen D. Dean, and hired a new attorney, Anthony E. Collins.

---

[1] Before accepting Holbrook's guilty plea, I conducted the colloquy required by Federal Rule of Criminal Procedure 11. Holbrook had already testified that she was a college graduate. Asked if she had ever been treated for mental illness, she testified that she had been treated for depression in 1996 and again in 2001. She stated that in 2001, after her husband's death, she had received four days of inpatient treatment for depression. She was prescribed medication for this condition, but after her discharge she did not have the money to go back to the doctor and did not take any medication for her depression. She denied ever being treated for substance abuse problems. She stated that she had a prescription medication to help her sleep and that she had taken it two nights before, but had taken no medication at all on the night before the guilty plea. Her attorneys affirmed that they had no doubt as to Holbrook's competency to enter a guilty plea. She agreed that she had had an adequate opportunity to discuss with her attorneys the charges against her. She stated that she had read and discussed the Plea Agreement with her attorneys before signing it and that she was fully satisfied with her counsel's representation.

Collins, an experienced attorney, was first contacted by Holbrook's sister, Lisa Clark, who brought him a copy of Holbrook's Plea Agreement. Collins then visited with Holbrook at the local jail, where she was detained pending sentencing. She told him that she wanted to withdraw her plea. She said that she had lied to the court during the plea colloquy and had only answered as directed by her attorneys. She contended she had not wanted to plead guilty but only did so because she felt she had no choice.

Collins also learned from Holbrook's sister that during the plea hearing, Holbrook had a "blank expression" on her face; that she had sleep and memory problems and had been taking Ambien, a prescription sleep medication.

On October 3, 2001, a few days after first talking with Holbrook, Collins sent her a retainer letter, by which he agreed to take her federal case as well as a pending state prosecution for first degree murder, in return for a retainer of $15,000. He told her in the letter that as soon as the retainer was paid, he was going to file motions to withdraw her guilty plea and "to determine competency at the time of offense and sanity." (Def.'s Ex. 1, Nov. 2, 2009)

At about the same time, Collins talked by telephone with Robert P. Granacher, Jr., M.D., a forensic psychiatrist in Lexington, Kentucky, who had assisted Collins

in another criminal case.[2] Collins told him about Holbrook's symptoms that had been related to him. Dr. Granacher told Collins that Holbrook could have been suffering from post traumatic stress disorder or disassociative reaction, but that he would need to examine her in person, subject her to testing, and talk with family members. (Hr'g Tr. 67, Nov. 2, 2009.)

After he learned that Holbrook had discharged him, attorney Kennedy wrote Collins a letter dated October 11, emphasizing the complexity of the case, and urging Collins to talk with him about the case as soon as possible. He also delivered to Collins' office on the next day his extensive files in the case. Collins never arranged a meeting and failed to talk with either Kennedy or his co-counsel Dean about any substantive matters relating to the case.[3]

---

[2]  While the other case was not identified by name, it appears to have been *Commonwealth v. Addison*, a murder prosecution in Wise County, Virginia, where Collins represented a defendant accused of killing his wife and in which Dr. Granacher testified for the defense that the defendant was psychotic and incompetent. *See Addison v. Commonwealth*, No. 2234-96-3, 1997 WL 557012, at *1-2 (Va. Ct. App. Sept. 9, 1997) (unpublished) (holding that the defendant's claim that he could not remember shooting his wife is insufficient evidence that the defendant was incompetent to stand trial).

[3]  Collins claims that he talked with Kennedy three times by telephone, only two of which were before he filed the motion seeking to withdraw Holbrook's guilty plea. (Hr'g Tr. 14, Nov. 2, 2009.) One of those calls was before Collins talked to Holbrook, simply to tell Kennedy that Holbrook had asked to see him. In the other call, Collins says, "We discussed just a little bit about the procedural history of the file." (*Id.*) Kennedy recalls only one brief telephone call in which Collins asked for Holbrook's file. (*Id.* at 94.) It is unnecessary to resolve this conflict in recollection in order to find that Collins never talked with the prior defense team about any substantive matters relating to the case.

Holbrook's sentencing on Count One was set for November 8, 2001. On November 5, Collins filed the motion seeking to withdraw Holbrook's guilty plea, along with a motion requesting an order permitting her to be examined by Dr. Granacher, and a Notice of Insanity Defense. The motion to withdraw alleged that Holbrook "was not mentally capable of understanding the nature and consequences of the plea" when it was entered; that she was "acting under duress" and "under a misunderstanding as to the potential sentence [she] could receive." (Def.'s Ex. 8 ¶¶ 2,3, Nov. 2, 2009.) It was also alleged that she was under the "wrong impression" that her state charges would be dismissed. (*Id*. ¶ 4.) Finally, it was asserted that Holbrook "has a significant defense to the criminal charges" in that she "did not possess the requisite mental state to violate the Federal criminal statutes under which she stands accused." (*Id*. ¶¶ 6, 7.)

In response, the government notified Collins by letter dated and faxed on November 7 that it considered the attempt to withdraw the plea as a breach of the Plea Agreement, and that it intended to hold Holbrook to her guilty plea on Count One and prosecute her on Count Two.[4] Collins then talked with the prosecutor, who assured Collins that if Holbrook would immediately withdraw her motion, the government

---

[4] The Plea Agreement provided that if Holbrook attempted to withdraw her guilty plea, the government could declare a breach. (Plea Agreement ¶ H.)

would forgive her breach of the Plea Agreement. Collins discussed the government's position with Holbrook, but she decided not to withdraw the motion.

On November 8, 2001, I conducted a hearing on the motion to withdraw. Collins argued that Holbrook should be allowed to withdraw her guilty plea because she had been legally insane at the time of the offenses, both when she executed the form to buy the firearm and when she shot her husband. Collins called Holbrook to testify at the hearing. In direct contrast with her trial testimony, she claimed that she did not remember what had happened the day her husband was killed. She testified that her trial testimony had been what she thought she "remembered" from hearing others talk about the incident, and that she did not think that she had killed her husband. (Hr'g Tr. 20-25, Nov. 8, 2001.) Holbrook's sister, Lisa Clark, testified that after the shooting and around the time of the trial and guilty plea, Holbrook had exhibited problems with her memory.

I took under advisement the request to withdraw the guilty plea and because of the allegations concerning her present incompetency and former insanity, ordered Holbrook committed to the Bureau of Prisons for an mental evaluation. The evaluators from the Bureau of Prisons filed reports on February 25, 2002, which opined that Holbrook was competent, did not suffer from a mental illness, and had

been able to appreciate the wrongfulness of her conduct during the time of the offenses.[5]

Following receipt of the examiners' reports, Collins wrote Dr. Granacher on March 5, 2002, to attempt to arrange an evaluation. In the letter, Collins told Granacher, "The only question before the Court is sanity at the time of the offense." (Def.'s Ex. 14, Nov. 2, 2009.) Dr. Granacher replied that he would evaluate Holbrook, but only after receipt of a retainer. Collins thereafter sent Dr. Granacher a number of documents taken from attorney Kennedy's file, as well as the Bureau of Prisons evaluation reports.

Another hearing on the motion to withdraw the guilty plea was scheduled for May 9, 2002. Collins attempted unsuccessfully to obtain a continuance of the hearing and when his motion was denied, faxed Dr. Granacher on May 8, asking him to be present at the hearing the next day, and to be prepared to address the issue of whether "there exists a defense based upon Ms. Holbrook's state of mind." (Def.'s Ex. 19, Nov. 2, 2009.)

At the hearing the next day, Collins called Dr. Granacher to testify as to his opinion of Holbrook's mental state. Dr. Granacher initially opined that he had found

---

[5] Two separate reports were filed, one entitled "Competency to Stand Trial Evaluation" and the other entitled "Criminal Responsibility Evaluation." (Def.'s Exs. 12 & 13, Nov. 2, 2009.)

"multiple instances of evidence that [Holbrook] had an altered mental state" and a "mental defect." (Hr'g Tr. 8, 14, May 9, 2002.) He eventually admitted, however, that Holbrook would not meet the criteria of the federal definition of insanity, which he understood to be "a severe mental disease or defect causing a person to be unable to appreciate the nature and quality or the wrongfulness of the acts." (*Id.* 17-18.)[6]

Based on this record, I found that there was not good cause to allow the withdrawal of the guilty plea. In my oral opinion, I noted that there was no evidence that the defendant had any credible insanity defense. While Collins argued that Dr. Granacher's testimony supported a justification or duress defense, I held that the absence of psychiatric evidence was not the reason that such a defense had been rejected. At trial, Holbrook testified that she had been afraid of her husband and that was the reason she had lied on the firearms form in order to obtain the .22 pistol and had later purchased the .357 magnum. I rejected this defense because under existing Fourth Circuit precedent there was insufficient evidence for the jury to find that Holbrook was in imminent danger either when she lied in order to obtain the .22

---

[6] This is the test imposed by the Insanity Defense Reform Act, 18 U.S.C.A. § 17(a) (West 2000). A defendant has the burden of proving the defense of insanity by clear and convincing evidence. 18 U.S.C.A. § 17(b) (West 2000). Collins testified that he had been aware at the time of the federal standard and its comparison with the traditional insanity test, which is applied in state courts in Virginia. He stated, however, that he did not believe he had ever filed a notice of insanity defense in federal court.

pistol or when she possessed the .357 magnum. *See United States v. Holbrook*, No. 2:01CR10023, 2001 WL 672058, at *3-4 (June 15, 2001) (describing nature of justification defense and reserving decision on whether it will be allowed to go to jury until evidence has been presented at trial). Even accepting Holbrook's testimony that she feared her husband, there was no evidence that she had been in imminent danger when committing the offenses charged.

The government moved to continue sentencing on Count One until after Holbrook could be retried on Count Two and I granted the government's motion. *United States v. Holbrook*, 207 F. Supp. 2d 472 (W. D. Va. 2002). I found that the remedy the government sought to pursue was authorized by paragraph D(g) of the Plea Agreement, which allowed the government in the event of breach to "refuse to abide by any other sentencing or other stipulations" in the agreement, including its promise to dismiss Count Two. *Id.* at 474-75.

Holbrook was then tried and convicted by a jury of Count Two.[7] Sentencing on both counts took place on October 17, 2002, and Holbrook was sentenced to 210 months imprisonment, consisting of 120 months on Count One and 90 months on

---

[7] Holbrook's primary defense at trial to Count Two was that she had not been represented by counsel at her disqualifying conviction of a misdemeanor crime of domestic violence. Court records indicated to the contrary. *See United States v. Holbrook*, 613 F. Supp. 2d at 755-56 n.3.

Count Two, the sentences to run consecutively. The convictions and sentence were upheld on appeal. *United States v. Holbrook*, 368 F.3d 415, 416-18, 421–24 (4th Cir. 2004), *reh'g and reh'g en banc denied*, 376 F.3d 259 (4th Cir. 2004), *rev'd*, 545 U.S. 1125 (2005).[8]

## II

To prove that counsel's representation was so defective as to justify relief, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 688. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

---

[8] The Supreme Court reversed as to the sentence, based on the intervening case of *United States v. Booker*, 543 U.S. 220 (2005). *Holbrook v. United States*, 545 U.S. 1125 (2005). The Fourth Circuit vacated the sentence and remanded for resentencing under *Booker*. *United States v. Holbrook*, 178 F. App'x 312 (4th Cir. 2006) (unpublished). At the resentencing, Holbrook was given the same sentence, which was affirmed on appeal. *United States v. Holbrook*, 242 F. App'x 29 (4th Cir. 2006) (unpublished), *cert. denied*, 128 S. Ct. 688 (2007).

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694.

I find that Collins' performance in relation to the withdrawal of Holbrook's guilty plea did fall below an objective standard of reasonableness.

I am satisfied that Collins filed the motion to withdraw without adequate investigation. He admitted at the hearing on the present 2255 motion that he could have waited to move to withdraw the guilty plea until after Holbrook had been properly evaluated as to her mental condition. When asked why he did not do so, he replied, "I guess hindsight is 20-20." (Hr'g Tr. 40, Nov. 2, 2009.)[9] Collins claims that Dr. Granacher surprised him with his testimony at the hearing of May 9, when the doctor testified that Holbrook did not meet the federal insanity test. But it is clear from Collins' faxed letter to Granacher the day before the hearing that he was only then focusing on the testimony to be given by Granacher. While Granacher may well have indicated to Collins early on that Holbrook might have suffered from an abnormal mental state, there is no evidence that Collins received any indication in

---

[9] Collins "other answer" as to why he did not adequately investigate the case was that "Miss [sic] Holbrook was adamant at the time that she did not want that plea." (*Id.*) But as I will explain, I do not find that an adequate excuse for his ineffective assistance.

writing or otherwise upon which he could reasonably rely in support of his motion to withdraw the guilty plea.

An experienced attorney in Collins' position would have known the uphill battle a defendant faces in seeking to withdraw a guilty plea. Federal Rule of Criminal Procedure 11(d)(2)(B) permits the withdrawal of a plea of guilty after acceptance but before sentence if "the defendant can show a fair and just reason for requesting the withdrawal." A defendant has no absolute right to withdraw his plea, *United States v. Bowman*, 348 F.3d 408, 413 (4th Cir. 2003), because it is a matter within the court's discretion, *United States v. Battle*, 499 F.3d 315, 319 (4th Cir. 2007). In deciding the motion, the court should consider:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or otherwise involuntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay between entry of the plea and filing of the motion; (4) whether the defendant has had close assistance of counsel; (5) whether withdrawal will cause prejudice to the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources.

*United States v. Ubakanma,* 215 F.3d 421, 424 (4th Cir. 2000) (citing *United States v. Moore,* 931 F.2d 245, 248 (4th Cir.1991)) (footnote omitted). An appropriately conducted guilty plea hearing "raise[s] a strong presumption that the plea is final and binding." *United States v. Lambey,* 974 F.2d 1389, 1394 (4th Cir. 1992); *see also United States v. Puckett,* 61 F.3d 1092, 1099 (4th Cir.1995).

In spite of this difficult standard, Collins made no effort to investigate the circumstances surrounding the taking of the plea, other than to obtain his client's and her sister's self-serving views. He did not even talk to the persons who best knew those circumstances—Holbrook's prior attorneys.[10]

Indeed, Collins knew first-hand from his own professional experience how difficult was the task of withdrawing a guilty plea. Collins had previously taken other cases over from original counsel and had sought to withdraw earlier pleas, without success. *See Hall v. Commonwealth*, 515 S.E.2d 343, 346-47 (Va. Ct. App. 1999) (holding that plea entered freely, voluntarily, and with complete and intelligent understanding as to its effect, barred motion to withdraw guilty plea); *United States v. Cullen*, No. 91-7046, 1991 WL 173000, at *2 (4th Cir. Sept. 10, 1991) (unpublished) (holding that adequate Rule 11 plea colloquy "constitute[s] a formidable barrier for the defendant to overcome in any later collateral proceeding" and affirming denial of motion to withdraw guilty plea).

Collins had good reason to know that a motion to withdraw Holbrook's guilty plea risked a sentence beyond the ten-year maximum guaranteed by the Plea

---

[10] Kennedy did tell Collins, in the courthouse immediately before the May 9 hearing, that he would not be helpful to Holbrook if he testified, but that was long after the motion had been filed. Kennedy had been subpoenaed to the hearing by the government.

Agreement. At best, such a motion would lead to a trial on both counts. The evidence at the first trial showed that the government's case was strong. While it was always possible that Holbrook could have been acquitted, that was an unlikely scenario, particularly once I disallowed a justification defense. Since Collins never consulted with prior counsel, and performed no other investigation other than talk with his client and her family, he had no real basis for judging the possibility of success at a new trial, particularly if he intended to rely on an insanity defense.[11]

It is true that Kennedy, who began representing Holbrook immediately after she killed her husband, first explored the possibility of an insanity defense, particularly because at that time she denied that she had any memory of the events. In addition, she had been hospitalized for four days for depression immediately after her husband's death. But Kennedy abandoned that idea, based on the absence of any adequate support for it, and Holbrook's eventual admission to him that she in fact had shot her husband.[12] Moreover, Kristen Dean, Kennedy's co-counsel, had actually

---

[11] Moreover, there is no evidence that Collins ever considered, or, more importantly, advised Holbrook, that even if she had been acquitted by a jury on the basis of insanity, she would have been subject to indefinite civil commitment. *See* 18 U.S.C.A. § 4243(a) (West 2000).

[12] The hospital discharge summary recites that Holbrook was admitted for "increasing depression with thoughts of hurting herself" because of her mother's death a year before and her husband's recent "suicide." (Def.'s Ex. 26, Nov. 2, 2009.) She was placed on medication and discharged as improved.

known Holbrook for several years and had previously represented her, and had no doubt as to her competency or any information suggesting that she had mental health issues.

Collins testified at the hearing that he had reviewed with his client the government's letter warning of a declaration of breach, which she said she understood. Holbrook does not contest this testimony.[13] But Holbrook did testify that she would not have pursued the motion if Collins had advised her that the chance for success was low and that she would face the possibility of a longer sentence. (Hr'g Tr. 160, Nov. 2, 2009.) I believe her in this regard. I find as a matter of fact that Collins never discussed with Holbrook the chances of success of a motion to withdraw. In this failure, Collins violated Rule 1.4(b) of the Virginia Rules of Professional Conduct, requiring that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

---

[13] Heather Crouse, Holbrook's longtime friend, testified at the hearing that Collins had told her that there was nothing to worry about in relation to the motion to withdraw and that even if the motion was unsuccessful, Holbrook would receive no additional time in prison. I do not believe Crouse's testimony, based on my opportunity to observe her testify, and her obvious interest in the outcome. Crouse also testified for Holbrook at the second trial, attempting to support Holbrook's claim about having memory problems. I believe that Crouse and Lisa Clark, Holbrook's sister, have allowed their close relationships with Holbrook to influence their testimony about these events.

The government suggests that Collins could not have sought to have his client examined by a psychiatrist without jeopardizing her favorable Plea Agreement, because such a action might have been construed as indicating that she no longer accepted responsibility for her criminal conduct, a breach of the agreement. But Collins did not need to explain to the government why he wanted Holbrook examined by a defense psychiatrist prior to sentencing. Indeed, it is not uncommon for defendants awaiting sentencing to be evaluated by a defense expert, in order to present evidence in mitigation of sentence. Holbrook's commitment to the Bureau of Prisons for evaluation was by the court, sua sponte, based on Collins' claims. Unless he intended to use Dr. Granacher's testimony, Collins did not need to advise the government of expert opinion on Holbrook's mental state.

Moreover, as far as Collins knew, he was under no real time pressure to file a motion to withdraw the guilty plea. Collins was retained in early October and the sentencing was set for November 8, a month away. If necessary, Collins could have moved the court to continue the sentencing hearing in light of his newly-accepted representation. Such a motion likely would have been granted for at least a sufficient period of time to have allowed Dr. Granacher to see Holbrook, test her, and talk with her family members, permitting Collins to investigate fully what actual support existed for a viable insanity defense.

The government also argues that Collins did not provide inadequate representation to Holbrook because he could not have reasonably anticipated that if the motion to withdraw the guilty plea was unsuccessful, she would be subjected to trial on Count Two. The government points out that the Fourth Circuit was not unanimous in affirming my decision to allow the government to try Holbrook on Count Two, with Judge King vigorously dissenting from the panel decision, *Holbrook*, 368 F.3d at 426-33, and other members of the court dissenting from the denial of hearing en banc, *Holbrook*, 376 F.3d 259.

It is true that the question of whether the Plea Agreement permitted the government to try Holbrook on Count Two based on her breach of the agreement was a close one, over which reasonable jurists might differ. But the closeness of that issue must be balanced by the detriment to Holbrook of an adverse ruling. Collins knew that the government was going to take the position that it could try Holbrook on Count Two, thus dramatically increasing her potential sentence. While he could not know how the court might rule on the government's position, he should have known that there was little chance of success on his motion to withdraw the plea. The odds of an unfavorable outcome for his client were large.

The government argues that even if Collins' representation was deficient in filing the motion to withdraw, that deficiency was not prejudicial. The government

asserts that Holbrook was "adamant" (in Collins' words) about withdrawing her plea, and thus no matter what Collins had advised her after proper investigation in terms of her chances of success, she would have still insisted on the motion.

In first place, Collins had an ethical obligation not to submit a frivolous motion.[14]  It is true that counsel must respect a client's decision to initially plead not guilty.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  In this situation, however, Holbrook had no power to insist that Collins file a motion that he believed, in his professional judgment, was unlikely to succeed and would subject his client to the possibility of more harm.  The proper course of action would have been to return Holbrook's $15,000 retainer and move to withdraw as counsel.[15]

---

[14]  Rule 3.1 of the Virginia Rules of Professional Conduct provides as follows:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.  A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

[15]  As stated by the American Bar Association,

Defense counsel has no duty to execute any directive of the accused which does not comport with law or [applicable] standards [of conduct].  Defense counsel is the professional representative of the accused, not the accused's alter ego.

*ABA Standards for Criminal Justice: Prosecution and Defense Function* § 4-1-2(e)

Secondly, I find that Holbrook would not have proceeded with the motion had she been properly advised of the likely outcome and possible consequences. It is certainly true, as the government points out, that from the beginning Holbrook sought to escape responsibility for her actions. But there is clear evidence, aside from her own testimony, that when properly advised, Holbrook was able to accept competent advice.

Holbrook was charged in state court with the first degree murder of her husband and Collins also took over her defense in that case. After the federal proceedings were concluded, Collins negotiated a plea agreement with the state prosecutor by which Holbrook pleaded guilty to manslaughter. Her plea was accepted, but she again changed her mind and Collins filed a motion on her behalf seeking to withdraw the state plea. Before the hearing on that motion, Holbrook hired a new lawyer, Ken Wills, and he was able to convince her that pleading guilty to the reduced charge was the best course of action. Holbrook acquiesced to her new attorney's advice, withdrew her motion, and proceeded with her state guilty plea. Collins explained why the new attorney was successful by saying, "I guess . . . often

(American Bar Association 3d ed. 1993). *See also* Va. Rules of Prof'l Conduct 1.16 ("A lawyer shall . . . withdraw from the representation of a client if: (1) the representation will result in violation of the Rules of Professional Conduct or other law. . . .")

I'm more lenient with my client than I should be. I let them make the decision, and I said 'It's up to you, this is the possibilities[,] you're going to decide, because down the road I don't want to be sitting where I'm at now saying it was my fault.'" (Hr'g Tr. 78, Nov. 2, 2009.)

If Collins had properly investigated the case, he would have reasonably determined that a motion to withdraw the guilty plea had virtually no chance to succeed, and if he had then advised his client of the likely outcome, it is probable that she would have accepted the correct advice that the motion should not be filed. At most, Collins only advised her of the possible consequences of an unsuccessful motion. He gave her no advice (and he does not claim that he did) on the likelihood of success of that motion. In fact, he had no basis at all for predicting that the motion would be successful, since he had not adequately investigated its possible grounds. Collins had a hope that Dr. Granacher might support an insanity defense, but that hope was not supported by any foundation. Even assuming that Dr. Granacher told Collins—before Granacher had even seen Holbrook—that she might have had some mental disorder, that was far from a sufficiently reliable foundation upon which to base a legal strategy whose failure posed such a disastrous outcome.[16]

---

[16] While Collins represented to the court at the first hearing on the motion to withdraw that the "biggest argument" in support of the motion was Holbrook's insanity defense (Hr'g Tr. 7, Nov. 8, 2001), he also asserted that she claimed that she had understood

In summary, through the efforts of attorneys Kennedy and Dean, Holbrook received the best result that she could hope for under the circumstances. While she did not want to plead guilty, she did so knowingly and intelligently because it was the only viable option available to her. Unfortunately for her, she later had second thoughts about her situation and traded her good attorneys for Anthony Collins, who proceeded to throw away the advantage she had received. Collins failed to adequately investigate the situation facing her. And more importantly, because of his lack of preparation, he failed to properly advise her that she was unlikely to be able to withdraw her plea, and thus almost certainly would face the possibility of an increased sentence. Under the facts, he should have advised her that her best course of action was not to attempt to withdraw her plea. If he had done so, I find that it is probable that Holbrook would have accepted his advice and saved herself the additional sentence that she received on Count Two.

---

that by pleading guilty she could still be found not guilty by reason of insanity and that her guilty plea would also resolve the pending state charges (*Id.* at 5-6). No evidence was ever presented to support these additional claims. At her plea hearing, Holbrook stated that she understood that if the court accepted her plea of guilty to Count One, she would be found guilty of that charge and that her Plea Agreement had nothing to do with any state charges. (Hr'g Tr. 12, 17, Aug. 23, 2001.) In light of Holbrook's answers at her plea hearing, a reasonable attorney in Collins' position would have known that these additional claims were without merit. *See United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc) ("Statements of fact by a defendant in a Rule 11 proceeding may not ordinarily be repudiated."); *Burket v. Angelone*, 208 F.3d 172, 191 (4th Cir. 2000) ("Absent clear and convincing evidence to the contrary, [a defendant] is bound by the representations he made during the plea colloquy.").

## III

Holbrook's criminal conduct does not engender sympathy. I am convinced that she intentionally killed her husband without justification, and that she has lied repeatedly in order to escape responsibility for that act. Nevertheless, like all citizens, good or bad, she was entitled under the Constitution to the assistance of competent counsel in the criminal prosecution against her. After attorney Collins entered the case, she did not receive that assistance, to her considerable detriment. For that reason, she is entitled to appropriate relief. That relief is to correct her sentence by placing her in the position that the government agreed to prior to Collins' entry into the case—a sentence of not more than ten years' imprisonment. I will accordingly enter an order vacating her conviction and sentence as to Count Two, leaving the existing sentence as to Count One.[17]

---

[17] Resentencing on Count One is not necessary in this case. The defendant has nearly fully served the sentence imposed on that count, and there are no circumstances which would make resentencing appropriate. Section 2255 provides that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 18 U.S.C.A. § 2255(b). This "language confers a broad and flexible power to the district courts to fashion an appropriate remedy." *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997) (internal quotations omitted).

DATED: January 23, 2010

/s/ JAMES P. JONES
Chief United States District Judge